OPINION OF THE COURT
Frank S. Rossetti, J.
This claim arises from a "dirt bike” accident in Bethpage State Park, Bethpage, Nassau County. Mr. Masone was injured when he fell over his bike in the course of traversing a small pile of sand at the end of a short, unpaved dirt trail. Claimants contend the State negligently created a dangerous condition by putting and leaving the sand there.
On January 27, 1989, between 3:00 and 4:00 p.m. on a clear winter afternoon, claimant and a fellow dirt biker were riding dirt or mountain bicycles on a paved bicycle path in Bethpage State Park. Said bikes are designed for "off-road” travel on natural or rough terrain. From the testimony of Mr. Masone and other of claimants’ witnesses it appears these bikes are stronger than bikes used on paved surfaces and have wide or fat gnarled tires which enable the bikes to ride over rough or irregular land. Said witnesses also testified that one of the attractions or thrills of dirt biking was jumping or becoming airborne over obstacles or raised portions of ground. Claimant’s contrary testimony that he rode merely for the joy of sightseeing was not credible. He was an experienced cyclist, a member of a cycling association and had raced bicycles competitively. Mr. Masone testified he was a dirt biking enthusiast, having taken up the sport five years prior to the subject accident.
On the day in question, claimant’s companion, Thomas Hallen, led him down a short dirt "trail” leading from the paved bicycle path to a parking lot about 100 yards north of said paved path. This trail, which was little more than an opening or gully in the woods apparently created by rainfall erosion, sloped gradually for about its first half and then more sharply as it curved to the right into the parking lot. The supposed dangerous pile of sand, which was not shown to be more than 2 to 3 feet above the surrounding terrain, was at the end of the trail, but there was an opening to the left of the pile which Mr. Hallen used to avoid the sand. Claimant admitted that prior to going down the trail he was told by his companion there was sand at the end of it, but he contends he did not know it was in a pile. Notwithstanding this warning, claimant proceeded down the trail at a speed which his own *257 witness (Mr. Hallen) estimated at 25 miles per hour, a speed which another of claimants’ witnesses indicated was excessive. Mr. Hallen further testified that the sand pile was visible for 70 yards up the trail and claimant made no attempt to avoid it or slow down (claimant admitted he did not apply his brakes). Mr. Hallen’s testimony indicated that claimant was skidding as he approached the sand pile and was thrown over the front of his bike when its front wheel ran into the sand. Other evidence indicated his left pedal hit the sand and caused him to fall. Whatever the exact sequence of events, the most reasonable inference is that claimant fell after attempting to ride over or jump the sand pile.
The first problem with claimants’ case is notice. While park employees admitted to knowledge of dirt bikers in the park generally, there was no specific admission or other evidence showing the State knew such bikers used the particular trail in question and the State’s park manager expressly stated that he received no reports of bikers thereon. The testimony of claimants’ witnesses as to seeing maintenance workers while riding on various trails in the vicinity was not sufficiently tied to the subject trail to establish circumstantial actual notice by a preponderance of the evidence. As to constructive notice, claimants’ photos of the accident scene (apparently taken within two weeks of the accident) do not show any clear indication of notorious precedent bicycle use.[1] Thus we find claimants have not met their burden of proving that the State had adequate actual or constructive notice of mountain bike use of the subject trail to make it sufficiently foreseeable that the sand pile in question posed an unreasonable danger to users of the park.
A more fundamental reason for finding no liability here is the scope of the State’s duty in its maintenance and supervision of the subject State park. As set forth by the Court of Appeals in its seminal cases of Basso v Miller (40 NY2d 233) and Scurti v City of New York (40 NY2d 433), the duty of a government entity as landowner or operator of a public park is the exercise of reasonable care under the circumstances, with foreseeability being the measuring stick of liability (see, Basso v Miller, supra, at 241). Prior to the advent of comparative negligence (see, CPLR art 14-A), a lack of duty, contribu *258 tory negligence and assumption of risk were all absolute bars to liability and thus fine distinctions between these legal concepts were pragmatically not required. However, with the introduction of the embracive concept of culpable conduct as only a mitigating factor as opposed to a total bar to liability (see, Arbegast v Board of Educ., 65 NY2d 161, 166-170), a more conscious analysis is required. In Arbegast the Court of Appeals made a distinction between express assumption of risk, based on common-law contract principles, and implied assumption of risk, where culpable conduct applied. However, in subsequent cases it indicated that in some situations assumption of risk was just a shorthand way of saying a defendant did not owe a duty to persons engaged in certain activities beyond that of making its premises as safe as they appeared. (See, Turcotte v Fell, 68 NY2d 432, 438; Drew v State of New York, 146 AD2d 847, 848, and cases cited [with respect to Scaduto v State of New York, 86 AD2d 682, affd 56 NY2d 762; see, Maddox v City of New York, 66 NY2d 270, 277]; Gallagher v Town of N. Hempstead, 144 AD2d 637, 638; Boltax v Joy Day Camp, 113 AD2d 859, 861, affd 67 NY2d 617; Kozera v Town of Hamburg, 40 AD2d 934, 935.)[2]
Thus, assumption of risk as an aspect of culpable conduct would appear to be limited to circumstances where a defendant has breached a duty of reasonable care in light of foreseeable uses, but plaintiff has nonetheless assumed the unreasonable risks arising therefrom by engaging in such uses. In contrast, where assumption of risk is another way of saying a defendant has no duty beyond that of making its premises as safe as they appear, it would seem such a defendant’s duty is defined by "[t]he risk reasonably to be perceived” (Palsgraf v Long Is. R. R. Co., 248 NY 339, 344). In such circumstances, where persons engage in sports or analogous activities where known risks are an inherent part thereof, government or other property owners on whose land such activities are conducted should not be deemed insurers *259 with respect thereto. Rather, they should only be required to exercise reasonable care to avoid unreasonable dangers beyond such inherent risks. While the parameters and perimeter of assumption of risk as a function of culpable conduct has not been conclusively or definitively determined, we believe we do not violate fundamental rules of negligence by relying on the noted first principles thereof, to wit, "[t]he risk reasonably to be perceived defines the duty to be obeyed”. (Palsgraf v Long Is. R. R. Co., supra, at 344; see, Basso v Miller, supra.)
Therefore, in fulfilling its duty of reasonable care to reasonable users of its public parks, we think it entirely proper for the State to take into account the normal and foreseeable risks encountered by participants in each individual sport or other recreational activity conducted thereon. The law must recognize the practical realities of such conduct (cf., Akins v Glens Falls City School Dist., 53 NY2d 325, 331). Defendant did not show that mountain or dirt biking was prohibited in the subject park or in State parks in general and, as indicated, it did have general knowledge of such activity in said park. Nevertheless, conceding this, and even conceding State knowledge of such use on the subject trail (something not otherwise adequately shown [see, supra, at 257]), the State is entitled to the benefit of the general concepts of foreseeability as applicable to this sport. This court has no difficulty taking judicial notice of the geographical fact that sand is not uncommon on the island of Long Island (see, Richardson, Evidence § 45 [Prince 10th ed]) and, because of its instability for wheeled vehicles, is a hazard to bicyclists in general and off-road dirt bikers in particular (see, op. cit., § 38). Of course, the placing of sand on paved highways or paths used by on-road bicyclists could create a foreseeably dangerous condition because such would not reasonably be anticipated by such users in the pursuit of their particular sport. Here, however, we are dealing with what at best can be characterized as a hiking trail (claimants did not establish that such was a notorious dirt biking trail [see, supra, at 257]) and even if State knowledge of mountain bike use could be assumed, it should also be assumed that participants therein would act reasonably in indulging in their sport in light of the obvious risks thereof. As noted, this legal assumption has defined a landowner’s duty with respect to sports such as claimant’s to maintain its land as safe as it appears. (See, supra, at 258.) The State is generally entitled to assume that users of its properties will obey the law (cf., e.g., Tomassi v Town of Union, 46 *260 NY2d 91, 97) and we think it a proper corollary that it may assume such users will act reasonably. In certain circumstances, especially where children are involved, unreasonable or dangerous conduct may reasonably be foreseeable, but such was simply not shown here with respect to this adult and experienced cyclist (cf., Curcio v City of New York, 275 NY 20, 23-24; Perretti v City of New York, 132 AD2d 537; Boltax v Joy Day Camp, 113 AD2d, supra, at 861).[3] 4Notwithstanding the arguably known propensity of mountain bikers to jump, we do not find it foreseeable that this would be attempted over an obstacle as manifestly hazardous to bicycle riders as the subject pile of sand (see, supra, at 259), particularly where a plainly visible and actually utilized alternate route was available. Thus, while in one sense claimant assumed the risk of injury by attempting to jump said known sand, the reasonable unforeseeability of such conduct vis-a-vis the readily known and apparent hazard therefrom absolves the State from liability therefor. (Cf., Boltax v Joy Day Camp, 67 NY2d, supra, at 620.) We are not dealing with a situation that might otherwise be hazardous to other anticipated or foreseeably reasonable users of the park. Hence our finding of no liability here is not one singularly dependent on claimant’s status as an arguably unauthorized user of the premises (see, Basso v Miller, supra, at 240, 241). Rather, it is based on the fact that the subject pile of sand did not constitute a dangerous condition to reasonably foreseeable and reasonably careful users of the park. We therefore find no duty to close the park to dirt bikers or otherwise warn them of obvious, known hazards (cf., Cimino v Town of Hempstead, 110 AD2d 805, affd 66 NY2d 709). Certainly the burden on the State of making its woodland parks totally safe for off-road bikers who disregard known and obvious dangers unreasonably outweighs any risk such bikers could be reasonably deemed not to be have assumed. (See, Basso v Miller, supra, at 241; cf., O’Keeffe v State of New York, 140 AD2d 998, 999, appeal dismissed and lv denied 73 NY2d 756.) Here the subject sand pile merely furnished the occasion for Mr. Masone’s accident. (See, Boltax v Joy Day Camp, 113 AD2d, supra, at 861.) It was not a foreseeably dangerous condition or a negligently culpable proximate cause thereof. (See, supra.)[4]
*261 Accordingly, we find claimants have failed to meet their burden of proving that defendant breached any reasonably foreseeable duty of care to claimant, and defendant’s motions to dismiss made at the conclusion of claimants’ case and at the close of evidence, upon which decision was reserved, are hereby granted and the claim is dismissed.

. Claimants also submitted a videotape of the trail and while such was useful as an aid to the court in understanding the configuration thereof, the fact such was taken almost 314 years after the accident made it of no value as evidence of any preexisting constructive notice.

. The fact the claimant at bar was arguably an amateur with respect to the particular sport of mountain or dirt biking, as opposed to a professionally or otherwise financially recompensed participant in the sport, does not constitute an absolute exception to said rule. (See, Drew v State of New York, 148 AD2d 847 [factually inconsistent with the seeming contrary such holding in Locilento v Coleman Catholic High School, 134 AD2d 39, 42 (3d Dept)]; see, 1 NY PJI2d 132 [1990 Supp]; Gallagher v Town of N. Hempstead, 144 AD2d 637; Perretti v City of New York, 132 AD2d 537, 538; cf., Benitez v New York City Bd. of Educ., 73 NY2d 650; Wertheim v United States Tennis Assn., 150 AD2d 157,158-159, lv denied 74 NY2d 613.)

. Claimants failed to demonstrate that childish or other foreseeably unreasonable dirt bikers were known users of the subject State park.

. Defendant also cites General Obligations Law § 9-103 as grounds for *261 finding no liability here, but the Court of Appeals has made clear that said statute has no application to supervised public parks where no encouragement or quid pro quo of limited liability is necessary (see, Iannotti v Consolidated Rail Corp., 74 NY2d 39, 43-44, and case quoted; Leonakis v State of New York, 126 AD2d 706), notwithstanding said court also made clear that the applicability of said statute (as amended) was not necessarily limited to wilderness or otherwise undeveloped lands (see, Iannotti v Consolidated Rail Corp., supra, at 44-45).