**Sharon TAYLOR, as mother and natural guardian of Justin Taylor, and Sharon Taylor, individually, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**94 Civ. 9245 (RWS).**

United States District Court,
S.D. New York.

Dec. 6, 1996.

Weinstein & Kahn (Stephen A. Weinstein, of counsel), New York City, for Plaintiffs.

Mary Jo White, United States Attorney for the Southern District of New York (Martin J. Siegel, Serene K. Nakano, Assistant U.S. Attorneys, of counsel), New York City, for Defendant.

## OPINION

SWEET, District Judge.

This opinion sets forth the findings of fact and conclusions upon which judgment will be entered dismissing the claims of plaintiffs Sharon Taylor ("Sharon"), the mother · of plaintiff Justin Taylor ("Justin"), (collectively "the Taylors"), for damages Justin suffered when a door which was the property of defendant the United States of America ("the Government") slammed on Justin's hand. It is addressed principally to Justin whose injury was real and painful, but regrettably not the basis for a damage award.

What happened to you on June 6, 1993, Justin, was an accident. It certainly was not your fault that the door to the playground suddenly slammed on your fingers. The seal had broken on the door closer, the fluid which kept the door from slamming dripped out, and the door smashed your fingers. After several trips to the doctors and the hospital and an operation, you lost the end of your third finger on your left hand. It hurt you a lot when it happened, and the casts and treatment were painful.

Because it was not your fault and because the accident has caused you a lot of pain and because the Government has a great deal of money and resources, you might think that the fair thing to do would be to give you and your mother $100,000 or more which could be used for your benefit or for schooling, or saved for college. In other words, because you were hurt, you should recover. That, in the law, is called absolute liability.

That does happen when the thing that causes the injury is very dangerous just by its very nature, like dynamite, for example. A door closer is an everyday device, and so absolute liability doesn't apply.

All of us in our complicated world are responsible for our acts, including the Government. If we do something that hurts someone else, we should try to make up for that harm by paying money damages to the person who got hurt if we are at fault. The idea is that you are responsible for any injury to someone else only if you knew of the danger and did not act to prevent it. The law recognizes there are accidents which occur for which no one is responsible, while there are others that occur because someone was careless or negligent and then that person is responsible.

In order to win your case, it was necessary to prove that the Government was careless and negligent· and did something wrong which caused the door holder to slam on your fingers. If the people who maintained the building in which you· lived knew that the seal had broken or that the door closer wasn't working, then, of course, they had a duty to repair it.

As you heard during the trial, there was a regular inspection of the doors, and nothing wrong was reported. Your case really turned on whether the Government, that is, the maintenance department of Governor's Island, knew about the defective door slammer. The only evidence that they did came from what Officer Campbell said when her deposition was taken. She said that the door had been defective since October 1992 and that she had reported the defective door slammer two to four weeks before you were hurt. However, the people at Governor's Island had no record that she had told them about the door closer.

What the Government knew and when it knew it is what the trial was all about and what I had to decide. I have decided that I do not believe what Officer Campbell said, and I should tell you why.

First of all, there is no record, either hers or the Government's, of her statement about the door closer. Of course, she is also a nice lady who would like to see you win. If she had complained a month before you were hurt that the lever of the door slammer was broken, I believe there would have been a record of that complaint. Finally, she stated that the lever of the door closer was broken, but the picture taken right after you were hurt shows that the lever was intact. Finally, if the door closer had been in the condition she said it was for as long as she said it was, it would have been seen and reported by the regular inspectors and the maintenance workers who·used the door. Based on everything I saw and heard during the trial, I have

decided that Henry Benjamin was telling the truth and Officer Campbell was mistaken.

I am sure that this decision will be a disappointment to you and your mother, but perhaps someday this need to find fault may protect you against a claim of injury when you did nothing wrong. I feel sure you will overcome the handicap that came from the door slamming on your fingers. I wish I could have awarded you damages, but the rules of law must prevail over a desire to help a bright and attractive young man.

The more formal portion of the opinion follows:

### Prior Proceedings

This action was commenced on December 27, 1994. Discovery was had, and a bench trial was conducted on October 16–18, 1996. Final argument and submissions were completed on November 15, 1996.

### Findings of Fact

On June 6, 1993, Sharon and her son Justin, then seven years old, were residents of Building 855, Governor's Island, New York (the "Building"), which was owned, operated and maintained by the United States Coast Guard.

On June 6, 1993, at approximately 1:20 p.m., while Justin was exiting the rear door of the Building on his way to the playground, the door slammed shut on his left middle finger and he sustained a partial amputation and degloving of the tip of his left middle finger.

On June 6, 1993, the severed finger tip was reattached at St. Vincent's Hospital as a composite graft. On June 17, 1993, Justin was admitted to St. Vincent's Hospital for surgery. The distal phalange of the finger was found to be necrotic, and was excised along with the gangrenous finger tip by Dr. Joel Grad. A full surface skin graft was excised, defatted and used to resurface the injured finger. A thenar flap was created to cover the degloving area. The flap was then used to cover the finger tip, and closed with sutures.

On July 9, 1993, Justin underwent a further operation for a division and inset thenar flap left middle finger. Dr. Grad liberated Justin's left middle finger from the thenar flap.

Seven weeks after July 9, 1993, Justin successfully completed hand therapy within seven weeks, was not taking prescription pain medication, increased his overall level of activity, increased use of his left hand, and resumed swimming. He began second grade in September 1993, and he has been able to perform all activities that he had performed before the injury to his left middle finger on June 6, 1993.

As a result of the accident and the treatment, Justin suffered considerable pain and has permanently lost the tip of his left middle finger. The loss is obviously permanent, primarily cosmetic, but with some psychological consequence.

The door closer and other door hardware that were used in conjunction with the rear door to the G–L Wing of the Building on and before June 6, 1993 were well made and well-suited to the door and its location on Governor's Island. However, the specifications of the door closer noted that inspection and adjustment of the closer were required.

There have been no other accidents involving the rear door to the Building, and there is no record of any complaint by tenants or anyone else about any malfunction involving the rear door to the Building, made at any time in 1993 before June 6. Officer Campbell did not make the complaint about which she testified.

The rear door to the Building was functioning properly during the week before the accident. The door was inspected by Coast Guard maintenance personnel two days before the accident and was found to be functioning properly. Justin used the door on the day of the accident three times without incident before he was hurt.

### Conclusions of Law

The Taylors brought this personal injury action under the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. § 1346(b), which provides that district courts shall have exclusive jurisdiction over claims against the United States for money damages for injury,

caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

Under the FTCA, the substantive law governing tort actions against the United States is the law of the state where the alleged acts and/or omissions occurred. *See Hatahley v. United States*, 351 U.S. 173, 182, 76 S.Ct. 745, 752, 100 L.Ed. 1065 (1956); *Goodkin v. United States*, 773 F.2d 19, 21 (2d Cir.1985). Accordingly, the issues in this action are governed by New York's law on negligence.

***The Government Was Not Negligent.***

 Under New York law relating to negligence, plaintiffs must prove (a) that defendant owed them a duty; (b) that defendant breached that duty; and (c) that as a result of that breach, plaintiffs suffered injury. *Akins v. Glens Falls City School District*, 53 N.Y.2d 325, 441 N.Y.S.2d 644, 424 N.E.2d 531 (1981); *Iannelli v. Powers*, 114 A.D.2d 157, 498 N.Y.S.2d 377, 380 (2d Dep't 1986).

 More specifically, the Taylors had to demonstrate that the Government, as their landlord, had actual or constructive notice of the defective rear door. *Lam v. Neptune Associates*, 203 A.D.2d 334, 610 N.Y.S.2d 538, 539 (2d Dept.1994); *Genkins v. 165 West 76th Street Associates*, 205 A.D.2d 454, 613 N.Y.S.2d 890, 891 (1st Dep't 1994).[1] "Liability based on constructive notice may only be imposed where a defect is visible and apparent and has existed for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Espinal v. New York City Housing Authority*, 215 A.D.2d 281, 626 N.Y.S.2d 790, 791 (1st Dep't 1995); *see also Gordon v. American Museum of Natural History*, 67 N.Y.2d 836, 501 N.Y.S.2d 646, 492 N.E.2d 774 (1986).

 Based upon the testimony and the exhibits, the Taylors failed to establish by a preponderance of the evidence, as found above, that the Government had actual or constructive notice of the condition that allegedly caused Justin's accident.

In *Rodriguez v. American Restaurant Ventures, Inc.*, 923 F.Supp. 598 (S.D.N.Y. 1996), plaintiff claimed that the defendant had notice of an icy patch upon which the plaintiff had slipped and fallen. The Honorable William C. Connor held that under New York law, "[a] general awareness of the existence of a dangerous condition is not sufficient to put defendant on constructive notice; instead the defendant must have notice of the specific condition at issue." *Id.* at 603. As the Court concluded, the plaintiff was required to prove "how long the [icy patch] had existed before the accident." *Id.*

After the decision in *Rodriguez* was issued on May 31, 1996, the New York Supreme Court, Appellate Division, decided *Winecki v. West Seneca Post 8113*, —— A.D.2d ——, 643 N.Y.S.2d 292 (4th Dept.1996). There, plaintiff claimed that the defendant must have had notice of water on its floor because the defendant's agent repeatedly checked the floor. Finding that fact insufficient to meet the plaintiff's burden of proving notice, the Court noted that "an owner's 'general awareness' that a dangerous condition may exist is insufficient to support a finding that the owner had constructive notice of the specific condition that caused the plaintiff to slip and fall." *Id.* 643 N.Y.S.2d at 293.

These decisions in *Rodriguez* and *Winecki* are in accord with earlier New York law. For example, in *Gordon v. American Museum of Natural History*, 67 N.Y.2d 836, 501 N.Y.S.2d 646, 492 N.E.2d 774 (Ct.App.1986), plaintiff claimed that defendant had notice of the waxy piece of paper plaintiff slipped on while traversing defendant's stairs because other pieces of paper had been observed on the steps before the accident. The New York Court of Appeals disagreed, holding that "neither a general awareness that litter or some other dangerous condition may be present" nor the presence of other, earlier

---

1. Because, under the FTCA, liability against the government can only be premised on negligence, state law that imposes absolute liability on landlords for injuries to tenants is superseded by the FTCA and is inapplicable to this case. *Wilson v. United States*, 434 F.Supp. 72, 76 (E.D.La.1977).

pieces of paper sufficed to establish notice; plaintiff was required to prove notice of "the particular condition that caused his fall." *Id.* at 647, 492 N.E.2d at 775. *See also Piacquadio v. Recine Realty Corp.*, 84 N.Y.2d 967, 622 N.Y.S.2d 493, 494, 646 N.E.2d 795, 796 (1994) (defendant must be actually or constructively aware of specific condition that causes accident).

Finally, in *Gardner v. United States*, 896 F.Supp. 89, 92 (N.D.N.Y.1995), the Court, interpreting New York law in a federal tort claim action like this one, held that the plaintiff was required to prove that "the United States had a reasonable opportunity to correct the dangerous condition. Plaintiff must present evidence of the length of time the condition existed prior to the accident. Failure to do so results in dismissal of the action." (internal citations omitted).

The Taylors have failed to meet the burden placed upon them by these authorities.

### Conclusion

For the reasons set forth above, the claims of Sharon and Justin Taylor are hereby dismissed.

It is so ordered.