**Sharon TAYLOR, as mother and natural guardian of Justin Taylor, and Sharon Taylor, individually, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**No. 1744, Docket 96–6318.**

United States Court of Appeals, Second Circuit.

Argued June 27, 1997.

Decided Aug. 21, 1997.

Stephen A. Weinstein, Weinstein & Kahn, New York City, for Plaintiff–Appellant.

Martin J. Siegel, Assistant United States Attorney, Southern District of New York, New York City, for Defendant–Appellee.

Before: MINER, McLAUGHLIN, CABRANES, Circuit Judges.

McLAUGHLIN, Circuit Judge:

## BACKGROUND

Justin Taylor lived with his parents on Governor's Island, which sits in New York Harbor and, until recently, served as a Coast Guard station. His father was a member of the Coast Guard, and the family lived in an apartment building on the island, as did other Coast Guard members and their families. Both the island and the apartment complex are owned and operated by the federal government.

On Sunday, June 6, 1993, when he was seven years old, Justin came out the rear door of his building, headed for the playground. The door, made of heavy steel, was equipped with a hydraulic door closer that, when operating properly, closed the door at a slow, even pace. Unfortunately, the rear door closer failed and the door slammed shut on Justin's hand, severing the tip of Justin's left middle finger. He underwent a series of operations to reattach the tip and weeks of physical therapy.

His mother as guardian sued the federal government for negligence under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq., alleging that the government had actual or constructive notice that the door was not functioning properly, and that the government's failure to fix it caused Justin's injury. Judge Robert Sweet conducted a bench trial. Taylor v. United States, 946 F.Supp. 314 (S.D.N.Y.1996). Much of the testimony concentrated on who knew about the malfunctioning door, and when.

Taylor testified that she occasionally heard the door slam after she moved into the building in August 1992. Taylor also presented the deposition testimony of Laura Campos, a tenant of the building, who testified that she too heard the door slam shut on several occasions. Campos told her own children to avoid the door on blustery days, when gusts of wind off New York Harbor would blast the door shut very rapidly. Neither mother testified that she reported the defect to government personnel.

Taylor also presented the deposition testimony of Petty Officer Ann Campbell, a member of the Coast Guard, who lived in the same building and served as "building coordinator." As building coordinator, Campbell was responsible for reporting maintenance problems. In her deposition, Campbell stated that the rear door had been slamming since October 1992, and that she had reported the problem to the "service ticket shop"— the office responsible for maintenance requests—two to four weeks before the accident. Campbell did not remember whether anyone came to fix the door after her request, and did not remember the ticket number of her complaint.

Campbell testified that, on the day of the accident, she heard Justin's scream, and went to the rear door. She found the area bloodied, and the door closer detached from the doorframe. She immediately reported the incident and soon thereafter two Coast Guard members came to the building to fix the door.

Finally, Taylor presented a video tape she made of the door a few hours after the incident, showing the door closer attached to the door and frame. The tape also revealed that the door still slammed shut.

The government called three witnesses. The first was Henry Benjamin, a maintenance mechanic on Governor's Island, who testified that he inspected the door the day after the accident. He stated that, while the door closer was attached to the door and frame, it was malfunctioning because one of the seals housing the hydraulic fluid had broken, causing the fluid to leak out. Without the fluid, there was no pressure to prevent the door from slamming.

Benjamin noted that the seals could have broken due to abuse or weather conditions. He added that if the door had been malfunctioning for any extended period of time, the door frame would have been damaged. There was no damage, however. This led him to conclude that the door closer malfunction was of recent vintage. Benjamin also testified that he passed through the door himself once a week during the six months before the accident, and that the door closer was not malfunctioning on any of those occasions.

The second witness was the Fire Chief of Governor's Island, Louis Montalto. He testified that his office made periodic fire inspections of the building in 1992 and 1993. His records disclosed no problem with the door or its closer during any of these inspections. He testified that he never saw the door slam during any of the inspections in which he participated.

The final witness was Tony Abbatantono, the foreman of the Governor's Island Structure Shop. He testified that carpenters in his shop made weekly inspections of the building where the Taylors lived. He explained that

if there were a minor problem, the carpenters would fix it, but if the problem were more serious, the carpenters would report the problem to the service ticket desk which, in turn, would direct other personnel to make the necessary repairs. Abbatantono stated that no service tickets had been issued for work on the door during the eighteen months prior to the accident. In addition, he testified that on June 4, the Friday before the accident, his carpenters performed a weekly inspection, and made only minor repairs to some of the doors in the building. He testified that no service ticket was requested for the door that injured Justin, leading Abbatantono to conclude that the door was functioning properly as of June 4, 1993.

On Monday, June 7, the day after the accident, service tickets were issued to replace the door. Mr. Benjamin testified that he ordered the service ticket after his post-accident inspection on Sunday.

The government also submitted an affidavit from David Parker, the Chief of Maintenance Control for Governor's Island. He stated that the Facilities Engineering Division keeps a computerized database of all service requests made to its division. A search of this database revealed no record of a request for service on the rear door of the building where the Taylors lived for the eighteen-month period before the accident.

The district court concluded that the government had neither actual nor constructive notice that the door closer was malfunctioning before Justin's accident. The court pointed out that there were no incidents involving the door in the past, and there was no record of any complaints by tenants of the building, including Petty Officer Campbell, before the accident occurred.

Judge Sweet determined that Petty Officer Campbell was not credible, finding that she "did not make the complaint about which she testified," principally because there was no record of the complaint anywhere. In addition, the district court noted that Campbell's credibility was in doubt because, while she testified that the problem with the door was that the closer became detached, the evidence showed that the closer was attached when the accident occurred, and that the real

cause was the broken hydraulic seal. The district court emphasized that weekly inspections, periodic fire inspections and an inspection just two days before the accident revealed no problems with the door.

Taylor appeals arguing that the district court: (1) applied the wrong legal standard for notice under New York law; and (2) erred because its findings of fact were not supported by the evidence.

## DISCUSSION

The FTCA allows plaintiffs to recover damages for an injury caused by the negligence of government employees acting within the scope of their employment. *See* 28 U.S.C. § 1346(b). "The liability of the federal government under the FTCA is generally determined by state law." *Mortise v. United States,* 102 F.3d 693, 696 (2d Cir.1996). The parties do not dispute that New York law applies.

### A. *Actual Notice*

Taylor makes a half-hearted attempt to argue that Campbell's knowledge of the malfunctioning door is imputed to the government, and that she therefore proved actual notice of the defect. This argument fails. The district court found that Campbell did not tell the truth when she testified that she knew of the problem and reported it to the authorities. The district court stated in its opinion "that Henry Benjamin was telling the truth and Officer Campbell was mistaken," and that the court "d[id] not believe what Officer Campbell said." Such credibility determinations are entitled to great weight, *see SNC S.L.B. v. M/V Newark Bay,* 111 F.3d 243, 250 (2d Cir.1997), and the district court's conclusion is fully supported by the record.

### B. *Constructive Notice*

Recently, the New York Court of Appeals reminded us that "[t]he duty of a landowner or other tort defendant ... is not limitless." *Di Ponzio v. Riordan,* 89 N.Y.2d 578, 583, 657 N.Y.S.2d 377, 679 N.E.2d 616 (1997). Under New York law, a landowner, who did not create the dangerous condition, is liable for negligence when a condition on

his land causes injury only when the land-owner had actual or constructive notice of the condition. *See Gordon v. American Museum of Nat. Hist.,* 67 N.Y.2d 836, 838, 501 N.Y.S.2d 646, 492 N.E.2d 774 (1986). "To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Id.* at 837, 501 N.Y.S.2d 646, 492 N.E.2d 774.

 In constructive notice cases, the plaintiff must prove not simply that the defendant was generally aware of the existence of the dangerous condition, but that the defendant had notice of the "particular condition" at issue. *See id.* at 838, 501 N.Y.S.2d 646, 492 N.E.2d 774; *Piacquadio v. Recine Realty Corp.,* 84 N.Y.2d 967, 969, 622 N.Y.S.2d 493, 646 N.E.2d 795 (1994); *Dima v. Breslin Realty, Inc.,* 658 N.Y.S.2d 115, 116 (App.Div.1997); *Rodriguez v. American Restaurant Ventures, Inc.,* 923 F.Supp. 598, 603 (S.D.N.Y.1996) (defendant must have notice of the "specific condition" at issue). The issue, then, is what level of "specificity" or "particularity" is contemplated by the rule.

Taylor argues that the district court held her to too stringent a standard of specificity. She claims that the district court required her to prove that the government had notice not merely that the door closer was malfunctioning, but rather that the seal within the closer housing the hydraulic fluid was leaking. Taylor argues that, while a plaintiff is required to show that the defendant had notice of the particular defect that caused the injury, the level of specificity required by the district court created an impossible burden.

### 1. Specificity in Describing the Particular Condition

In *Gordon v. American Museum of Natural History,* the plaintiff sued for damages after he slipped on a piece of paper while climbing the stairs to the entrance of the Museum. 67 N.Y.2d at 837, 501 N.Y.S.2d 646, 492 N.E.2d 774. He argued that the Museum had constructive notice of the dangerous condition that caused his injury because: (1) Museum employees were generally aware "that litter or some other dangerous

condition may be present"; and (2) other bits of paper littered the stairs ten minutes before his fall. *Id.* at 838, 501 N.Y.S.2d 646, 492 N.E.2d 774. The Court of Appeals held that these circumstances were insufficient to support liability because neither showed that the Museum had constructive notice "of the paper he fell on." *Id.*

 Under the principles of *Gordon,* awareness of a *general* dangerous condition is not enough to charge a defendant with constructive notice of the *particular* dangerous condition that caused an injury. Constructive notice of a *particular* condition is inextricably intertwined with the concept of foreseeability. *Cf. Masone v. New York,* 149 Misc.2d 255, 563 N.Y.S.2d 992, 994 (N.Y.Ct. Cl.1990) (plaintiffs failed to prove constructive notice of a particular condition to make it sufficiently foreseeable that the condition posed an unreasonable danger to users of state park). In constructive notice cases, when knowledge of a broadly defined, generalized danger is imputed to a defendant, it is less likely that the defendant would reasonably foresee the particular risk of injury sustained by the plaintiff. *Cf. Zasada v. Niagara Mohawk Power Corp.,* 50 A.D.2d 1011, 376 N.Y.S.2d 715, 717–18 (App.Div. 1975) (distinguishing earlier New York case and allowing question of foreseeability to go to jury where defendant was more likely to have had constructive notice of particular danger causing injury).

 Courts must, therefore, examine the facts of each case to determine whether the plaintiff has proven notice of a dangerous condition at a level of specificity sufficient to support liability. In *Gordon,* for instance, describing the danger as litter on the stairs was not specific enough. So too, the danger of papers on the stairs was too general. Yet, said the Court, notice that the particular paper upon which Gordon fell was on the steps would have been sufficiently specific. In *Gordon,* as here, the generalized dangers peculiar to buildings (*i.e.,* hard surfaces to fall on, lofty heights to fall from, slamming doors, etc.) are ordinarily not specific enough to charge the defendant with constructive

notice of the particular condition causing injury.

Proving constructive notice that the door was "malfunctioning" is also too general to support liability. There is an infinite number of possible malfunctions to a door (the door sticks, a window was broken, the door handle was missing, the wood was rotten, etc.), and, consequently, an infinite variety of risks of injury. Notice of a malfunction, while concededly more specific than notice of the dangers generally associated with buildings (*i.e.*, hard surfaces, lofty heights, etc.), does not make the particular risk of injury sustained any more foreseeable. In this case, Taylor had to prove that the government had constructive notice of the *individual malfunction*—the defective door closer, *i.e.*, that the door was slamming. *Cf. Gordon*, 67 N.Y.2d at 838, 501 N.Y.S.2d 646, 492 N.E.2d 774.

Taylor did not need to prove that the government had notice of the rupture of the particular seal housing the hydraulic fluid. Such an extreme notion of specificity would be draconian, forcing a plaintiff to prove not only constructive notice of the specific dangerous condition, but also the *cause* of the particular dangerous condition. No court has gone that far.

The district court held that "the Taylors had to demonstrate that the Government, as their landlord, had actual or constructive notice of the defective rear door.... [But, b]ased upon the testimony and the exhibits, the Taylors failed to establish by a preponderance of the evidence ... that the Government had actual or constructive notice of the condition that allegedly caused Justin's accident." *Taylor*, 946 F.Supp. at 317 (citations omitted). The district court reasoned that "[i]f the people who maintained the building in which [Justin] lived knew that the seal had broken *or that the door closer wasn't working*, then, of course, they had a duty to repair it." *Id.* at 315 (emphasis added). The court did not require that Taylor prove that the government had notice of the specific ruptured seal within the door closer, but only that the door closer was malfunctioning. This is exactly the level of specificity at which Taylor had to show constructive notice.

The district court did not err in holding Taylor to this burden.

## C. Findings of Fact

We review a district court's findings of fact for clear error. Fed.R.Civ.P. 52(a). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

There are two versions of what happened before Justin's accident. In the first version, which Taylor advocates, tenants knew about the slamming door for a year and Petty Officer Campbell reported the malfunctioning door two to four weeks before the accident, putting the government on actual notice of the condition. Taylor surmises that the service ticket dated on the Monday after the accident calling for the replacement of the door was a product of the carpenters' inspection on the Friday before the accident. In addition, in Taylor's version, Campbell saw the door closer detached from the frame immediately after the accident, reported the incident, and two hours later two Coast Guardsmen reattached the door closer to the frame. Taylor then videotaped the door, showing the closer attached to the frame, but still slamming shut.

The district court accepted a different version. It found that Campbell did not report the malfunctioning door before the accident. It premised this conclusion on the fact that there was no record of the complaint. The Court also reasoned that the preponderance of the evidence suggested that the door closer was attached to the frame. In addition, the district court reasoned that the government could not have had constructive or actual notice of the malfunctioning door because: (1) there was no record of any complaint regarding the door in the months prior to the accident; (2) the carpenters, on their weekly inspections in the months prior to the accident, found no problem with the door; (3) the fire squad found no problem with the door during its occasional inspections; (4) Benjamin testified that he had used the door once a week for the six months before the accident and

never found that it slammed; and (5) there was no wear or tear on the door frame, the usual signal of the continuous slamming of a door. Furthermore, Benjamin testified that he, not the carpenters, ordered the Monday service ticket *after* the accident. The theory that the carpenters ordered the door replaced on the Friday before the accident is mere conjecture.

Simply put, there were two equally plausible versions of events. The district court decided, based on credibility assessments, and the dearth of documentary evidence supporting Taylor's claim, that the government did not have constructive notice of the defective door.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.