**Luz Maria GONZALEZ, Plaintiff,**

v.

**WAL–MART STORES, INC. and Sam's Club, Defendants/Third–Party Plaintiffs,**

v.

**Mid Westchester Lawn Service, Third–Party Defendant.**

**No. 00 Civ. 6246(JGK).**

United States District Court, S.D. New York.

Jan. 7, 2004.

Scott A. Brody, Brody, O'Connor & O'Connor, Northport, NY, for Sam's Club.

Steven L. Kahn, Pena & Kahn, Bronx, NY, for Luz Maria Gonzalez.

Edward Lebeaux, Michael J. Ross, Robert J. Sambrato, New York, NY, Thomas M. O'Connor, Brody, O'Connor & O'Connor, Northport, NY, for Mid Westchester Lawn Service.

### OPINION and ORDER

KOELTL, District Judge.

The plaintiff, Luz Maria Gonzalez, brought this action in the New York State Supreme Court, New York County, against Wal–Mart Stores and Sam's Club (collectively, "Sam's Club"), alleging that the defendants' negligence caused Gonzalez to slip, fall, and injure herself in the parking lot of a Sam's Club store in Elmsford, New York on May 29, 1999. The defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, and jurisdiction is based on diversity pursuant to 28 U.S.C. § 1332. Following removal to this Court, the defendants, as third-party plaintiffs, filed a complaint pursuant to Federal Rule of Civil Procedure 14 against third-party defendant Mid Westchester Lawn Service ("Mid Westchester") seeking contribution or indemni-

ty.[1] Both Sam's Club and Mid Westchester have moved, pursuant to Federal Rule of Civil Procedure 56, for summary judgment on the claims made against each of them.

## I.

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir.1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo*, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *see also Gallo*, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994). If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir.1993); *see also Scotto v. Almenas*, 143 F.3d 105, 114–15 (2d Cir. 1998) (collecting cases).

## II.

Unless otherwise noted, the following facts are not in dispute. The plaintiff is a resident of Westchester County, New York. (Verified Compl. ¶ 1.) Wal–Mart Stores, Inc., doing business as Sam's Club, is a Delaware corporation with its principal place of business in Arkansas. (Def.'s Not. of Removal.) Mid Westchester is the

---

1. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the third-party claims against Mid Westchester, and the fact that Mid Westchester is a New York sole proprietorship does not affect the Court's diversity jurisdiction over the claims asserted between the original parties. *See Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 66 n. 1, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996).

"doing business" name for a sole proprietorship of a New York resident. (Third–Party Compl. ¶ 5; Third–Party Answer ¶¶ 1–6; Transcript of Deposition of Edward Kardian dated Sept. 12, 2002 ("Kardian Dep.") attached as Ex. K to Defs.' Not. of Mot. ("Defs.' Mot."), at 4–5.)

The plaintiff alleges that on May 29, 1999 she visited a Sam's Club store in Elmsford, New York. (Verified Compl. ¶¶ 25, 28.) She further alleges that while she was walking in the Sam's Club parking lot, she was caused to trip and fall when her feet became tangled in an approximately two-feet long strip of white plastic rope that was lying on the pavement. (Id. ¶ 28; Transcript of Deposition of Luz Maria Gonzalez dated July 16, 2001 ("Gonzalez Dep.") attached as Ex. G to Defs.' Mot., at 14–15; Transcript of Deposition of Eugolia Ramiro Grullon dated Sept. 12, 2002 ("Grullon Dep.") attached as Ex. I to Defs.' Mot., at 20–23.) The accident allegedly occurred at approximately 11:30 in the morning on a Saturday, and the plaintiff was accompanied by her husband and her daughter. (Defs.' Rule 56.1 St. ¶ 2; Gonzalez Dep. at 8, 22.) The plaintiff maintains that she did not see the rope before she tripped on it, but her testimony on the issue was ambiguous. (Defs.' Rule 56.1 St. ¶ 2; Pl.'s Resp. Rule 56.1 St. ¶ 5; Gonzalez Dep. at 16–17.) She does not know how long the rope had been on the pavement before she fell, but she stated that similar ropes were "always ... on the ground" in the Sam's Club parking lot. (Defs.' Rule 56.1 St. ¶ 3; Gonzalez Dep. at 16–19, 22.) When shown a picture of rope allegedly similar to that involved in the accident, Eddie Gavida, an employee of Sam's Club, stated: "It looks like T.V. or computer— they come attached with the plastic—you have the monitor and the computer. They come attached and you have this plastic ropes around it so a lot of time people cut them because they don't fit in cars. . . .

To me this looks like a thin rope. . . . This looks like it's a thin plastic that T.V.'s have around them." (Transcript of Deposition of Eddie Gavida dated Sept. 12, 2002 ("Gavida Dep.") attached as Ex. J to Defs.' Mot., at 23–24.)

The plaintiff stated that she did not make any complaints to Sam's Club about conditions in the parking lot prior to the accident, and that she is unaware of anyone else who made any such complaints. (Defs.' Rule 56.1 St. ¶ 3; Gonzalez Dep. at 19.) Neither the plaintiff nor anyone on her behalf reported her accident to Sam's Club after the accident occurred. (Gonzalez Dep. at 48–49; Grullon Dep. at 25.)

Gavida testified that, in May 1999, Sam's Club employed a "front-end manager," whose responsibilities included removing boxes and other debris from the area in front of the store, including the parking lot. (Defs.' Rule 56.1 St. ¶ 5; Pl.'s Resp. Rule 56.1 St. ¶ 4; Gavida Dep. at 9–10.) Gavida stated that Sam's Club also employed "parking lot partners," who cleaned up debris in the parking lot whenever they saw it, although there was no set schedule for such cleaning during the day. (Defs.' Rule 56.1 St. ¶ 5; Pl.'s Resp. Rule 56.1 St. ¶ 4; Gavida Dep. at 11–12, 16.) Gavida testified that the Sam's Club parking lot contained about three garbage cans per aisle of parked cars. (Defs.' Rule 56.1 St. ¶ 6; Pl.'s Resp. Rule 56.1 St. ¶ 4; Gavida Dep. at 19.) Sam's Club submitted further evidence documenting its regular policies concerning maintenance and cleaning of store premises, including the parking lot. (Affidavit of Alvin Bowen dated June 4, 2003 attached as Ex. Q to Defs.' Mot.)

Sam's Club contracted with Mid Westchester to empty the garbage cans and clean the debris in the parking lot on a daily basis. (Gavida Dep. at 16–17; Kardian Dep. at 6–7.) Mid Westchester would

clean the parking lot everyday beginning at around 6:00 a.m., and the job would take between an hour and an hour and a half. (Gavida Dep. at 16–17; Kardian Dep. at 7.) Edward Kardian, the owner of Mid Westchester, stated that he and his crew would go to the Sam's Club parking lot every morning and "take a pickup truck which is left there, drive around and pick up any remaining boxes, garbage. They would pick up papers, . . . cigarette butts, basically cleaning down to everything making it spotless." (Kardian Dep. at 7.) Kardian stated that the parking lot was generally dirtier on Saturday and Sunday than on other days of the week. (Kardian Dep. at 13.) Prior to May 1999, Mid Westchester had never received any complaints concerning rope or other debris in the Sam's Club parking lot. (Kardian Dep. at 10.)

Maria Ferreras, a friend of the plaintiff and a former employee of the Sam's Club in Elmsford, New York, testified that when the plaintiff described the rope that caused the accident Ferreras recognized it as the type of plastic used to tie boxes and that "it was always in the parking lot." (Transcript of Deposition of Maria Ferreras dated Nov. 7, 2002 ("Ferreras Dep.") attached as Ex. L to Defs.' Mot., at 20; Defs.' Rule 56.1 St. ¶ 11; Pl.'s Resp. Rule 56.1 St. ¶ 2.) Ferreras worked at the Elmsford, New York Sam's Club for approximately two years, and she last worked there in 1995. (Id. at 6–7; Defs.' Rule 56.1 St. ¶ 10; Pl.'s Resp. Rule 56.1 St. ¶ 2.) Ferreras stated that when she worked at Sam's Club she would routinely see in the parking lot rope similar to that allegedly involved in the plaintiff's accident. (Ferreras Dep. at 24.) Ferreras stated that since 1995 when she stopped working at the Sam's Club, she would shop there perhaps once a month, and maybe more times around the holidays. (Ferreras Dep. at 11.) She could not remember whether she went to the Sam's Club at any point in the first six months of 1999. (Defs.' Rule 56.1 St. ¶ 10; Ferreras Dep. at 13–14.)

### III.

■ Sam's Club now moves for summary judgment on the grounds that it had neither actual nor constructive notice of the dangerous condition that allegedly caused the plaintiff's injury. Mid Westchester also moves for summary judgment dismissing the claims asserted against it in the third-party complaint.

■ Under New York law, which the parties agree applies to this case, to establish a prima facie case of negligence against a landowner where an alleged dangerous condition on the land causes an injury, the plaintiff must demonstrate that the landowner created the condition that caused the injury, or that the landowner had actual or constructive notice of the condition. *Uhlich v. Canada Dry Bottling Co.*, 305 A.D.2d 107, 758 N.Y.S.2d 650, 651–52 (App.Div.2003); *Taylor v. United States*, 121 F.3d 86, 89–90 (2d Cir.1997). Finding that the defendant created the dangerous condition requires "some affirmative act" on the part of the defendant. *Fink v. Bd. of Educ.*, 117 A.D.2d 704, 498 N.Y.S.2d 440, 441 (App.Div.1986). In this case, the plaintiff has submitted no evidence that Sam's Club created the allegedly dangerous condition-the white plastic rope in the parking lot-that caused her injury. Nor has the plaintiff submitted evidence that Sam's Club had actual notice of the condition.

■ Rather, the plaintiff contends that Sam's Club had constructive notice of the dangerous condition that allegedly caused her accident. "To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and

remedy it." *Gordon v. Am. Museum of Natural History*, 67 N.Y.2d 836, 501 N.Y.S.2d 646, 492 N.E.2d 774, 775 (1986). The plaintiff has submitted no evidence establishing how long the particular rope had been in the parking lot before her accident. In fact, the plaintiff insists that before the accident she herself did not see the rope that allegedly caused her to fall. (Pl.'s Resp. Rule 56.1 St. ¶ 5.) There is no evidence that the rope was dirty or worn or in some other condition that would permit an inference that the rope had been on the ground for an extended length of time. Therefore, even assuming that the rope was visible and apparent in the parking lot, it cannot be concluded that the rope had been in the parking lot for a sufficient length of time prior to the accident to permit Sam's Club employees to discover it and remove it. *See Gordon*, 501 N.Y.S.2d 646, 492 N.E.2d at 775 ("The record contains no evidence that anyone, including plaintiff, observed the piece of white paper prior to the accident. Nor did he describe the paper as being dirty or worn.... Thus, on the evidence presented, the piece of paper that caused plaintiff's fall could have been deposited there only minutes or seconds before the accident and any other conclusion would be pure speculation.").

 Nevertheless, the plaintiff may also establish constructive notice by submitting "evidence that an ongoing and recurring dangerous condition existed in the area of the accident which was routinely left unaddressed by the landlord." *O'Connor–Miele v. Barhite & Holzinger*, 234 A.D.2d 106, 650 N.Y.S.2d 717, 719 (App. Div.1996). When a landowner has actual knowledge of a recurring dangerous condition, the landowner "can be charged with constructive notice of each specific reoccurrence of the condition." *Garcia v. U–*

*Haul Co. Inc.*, 303 A.D.2d 453, 755 N.Y.S.2d 900, 900 (App.Div.2003).

However, the New York Court of Appeals has instructed that a defendant's "general awareness" of a dangerous condition on the premises is not legally sufficient to charge a defendant with constructive notice of the particular condition that caused the plaintiff's injury. *Gordon*, 501 N.Y.S.2d 646, 492 N.E.2d at 775 (finding that defendant's general awareness of litter on premises was not sufficient to establish defendant's constructive notice of wax paper on which plaintiff slipped); *see also Piacquadio v. Recine Realty Corp.*, 84 N.Y.2d 967, 622 N.Y.S.2d 493, 646 N.E.2d 795, 796 (1994).

 Rather, a plaintiff must adduce evidence showing a defendant's constructive notice of the particular dangerous condition that caused the accident. *See Taylor*, 121 F.3d at 90–91; *Fay v. Bass Hotels & Resorts, Inc.*, No. 00 Civ. 9107, 2003 WL 21738967, at *6 n. 3 (S.D.N.Y. July 28, 2003). The plaintiff is not required to establish the defendant's knowledge of the existence of the exact item on which the plaintiff fell. *See Weisenthal v. Pickman*, 153 A.D.2d 849, 545 N.Y.S.2d 369, 370–71 (App.Div.1989). However, the plaintiff must show that the defendant had such knowledge of the particular dangerous condition that is "qualitatively different from a mere 'general awareness' that a dangerous condition may be present." *Chin v. Harp Marketing*, 232 A.D.2d 601, 648 N.Y.S.2d 697, 698 (App.Div.1996) (summary judgment held improper where supermarket's employee testified that he knew salad dressing bottles, similar to that on which plaintiff fell, sometimes dropped from displays and broke); *see also McLaughlin v. Waldbaums, Inc.*, 237 A.D.2d 335, 654 N.Y.S.2d 406, 407 (App. Div.1997) (summary judgment held improper where plaintiff was injured when

soda bottles fell on her after she took one from supermarket display and defendant's employee testified that display in question was "wobbly" and bottles sometimes dropped from it when customers removed bottles). Whether a plaintiff has established a defendant's awareness of a dangerous condition at a level of specificity sufficient to establish constructive notice turns on the facts of each case, but the inquiry is guided by the principle that "[c]onstructive notice of a *particular* condition is inextricably intertwined with the concept of foreseeability." *Taylor*, 121 F.3d at 90.

The plaintiff argues that the rope on which she tripped was a specific reoccurrence of a recurring dangerous condition in the Sam's Club parking lot. The plaintiff maintains that her deposition testimony as well as that of Ferreras and Kardian establishes that the parking lot was repeatedly littered with boxes, cartons, and other debris. She further notes that both she and Ferreras testified that they had previously seen in the Sam's Club parking lot rope similar to that which allegedly caused the plaintiff's injury. She also contends that the parking lot had an insufficient number of garbage cans, and that Sam's Club had an inadequate cleaning regimen in place for the parking lot. The plaintiff thus argues that the rope that allegedly caused her to fall was a specific reoccurrence of a recurring dangerous condition of which Sam's Club had actual knowledge, and that Sam's Club therefore had constructive notice of the particular condition that caused her accident.

However, the evidence submitted by the plaintiff is legally insufficient to establish the defendants' constructive notice of the rope that allegedly caused the plaintiff's injury. The plaintiff has established at most that the defendants were generally aware that the parking lot accumulated boxes and other debris that customers discarded. The facts of this case closely resemble those in cases in which courts have found that the plaintiff has demonstrated that the defendant had a general awareness of a dangerous condition, but not knowledge of the particular condition that caused the plaintiff's injury. Indeed, this case is similar to *Gordon*, where the New York Court of Appeals held that a general awareness of litter was insufficient notice of the particular litter that was the cause of the plaintiff's accident. *See Gordon*, 501 N.Y.S.2d 646, 492 N.E.2d at 775; *see also Gloria v. MGM Emerald Enter.*, 298 A.D.2d 355, 751 N.Y.S.2d 213, 214 (App. Div.2002) (affirming summary judgment dismissing complaint because defendant's general awareness that its patrons carried drinks from bar across dance floor where plaintiff fell was insufficient to establish defendant's constructive notice of particular condition that caused plaintiff's injury); *Yearwood v. Cushman & Wakefield*, 294 A.D.2d 568, 742 N.Y.S.2d 661, 662 (App. Div.2002) ("Assuming that the defendant was aware that water on the lobby floor was a recurring condition in rainy weather, proof that the defendant was aware of this general condition would not be sufficient to establish constructive notice of the particular condition on the marble floor which caused the plaintiff to slip."); *Kraemer v. K–Mart Corp.*, 226 A.D.2d 590, 641 N.Y.S.2d 130, 131 (App.Div.1996) (affirming summary judgment dismissing complaint where plaintiff slipped and fell on small piece of cardboard or plastic store ticket, because "the defendant's general awareness of the fact that price and size tickets did at times fall from its shoes is insufficient to establish constructive notice of the particular condition which caused the plaintiff's fall"); *Bernard v. Waldbaum, Inc.*, 232 A.D.2d 596, 648 N.Y.S.2d 700, 701 (App.Div.1996) (affirming summary judgment dismissing complaint be-

cause evidence of defendant's awareness that supermarket produce might have fallen on floor was insufficient to establish constructive notice of blueberries on which plaintiff slipped and fell).

The cases cited by the plaintiff do not require a conclusion to the contrary. These cases show that summary judgment will be denied when the plaintiff raises an issue of fact by presenting evidence that his or her injury was caused by a *specific* reoccurrence of a recurring dangerous condition, and where the condition is apparently dangerous. *See Garcia,* 755 N.Y.S.2d at 900 (affirming denial of summary judgment for defendant where plaintiff tripped and fell on metal beam in defendant's storage facility and where defendant's employee testified he had observed beams on floor once or twice a month); *Kivlan v. Dake Bros. Inc.,* 255 A.D.2d 782, 680 N.Y.S.2d 293, 294 (App. Div.1998) (affirming denial of summary judgment for defendant where plaintiff slipped on oil spot in front of defendant's convenience store and gas station and where evidence showed recurring problem of oil spills resulting from defendant's customers using self-serve gas pumps as well as motor oil and other automotive fluids sold in convenience store); *O'Connor–Miele,* 650 N.Y.S.2d at 719 (summary judgment held improper where plaintiff slipped on soap powder in apartment building stairwell and where evidence showed recurring problem of spilled soap powder in stairwell caused by tenants moving between floors to find available washing machines).

In contrast to the cases cited by the plaintiff, in this case there is no evidence that the defendants were, or should have been, on notice to protect against injuries caused by specific reoccurrences of a dangerous condition, namely, accumulations of plastic rope in the Sam's Club parking lot.

Assuming that the defendants had a general awareness that boxes and other debris accumulated in the parking lot, they would not have been put on notice that injuries caused by the particular condition at issue here were foreseeable. There is no evidence that the defendants had knowledge of recurring accumulations of plastic rope that created an apparently dangerous condition that should have been corrected.

There is no evidence, for example, that Sam's Club had received complaints concerning the particular condition that caused the plaintiff's injury-or, for that matter, concerning the general accumulation of debris in the parking lot. *See Carlos v. New Rochelle Mun. Hous. Auth.,* 262 A.D.2d 515, 692 N.Y.S.2d 428, 428 (App.Div.1999) (affirming summary judgment for defendant where defendant's executive director swore that no prior complaints had been received with respect to accumulating garbage or debris where the accident occurred); *Uhlich,* 758 N.Y.S.2d at 651–52 (affirming denial of summary judgment to defendant tenant where plaintiff had previously complained to tenant about garbage and broken asphalt that caused his injury); *Smith v. Funnel Equities, Inc.,* 282 A.D.2d 445, 723 N.Y.S.2d 194, 195 (App.Div.2001) (summary judgment should be granted to defendant because "[t]he plaintiffs did not offer any evidence to establish that debris was present on the loading dock for any appreciable period of time, or that any prior complaints of debris on the loading dock were made to the defendants"). The plaintiff herself never complained about the condition of the Sam's Club parking lot, and she did not submit evidence that any other person had ever complained about the condition of the parking lot.

Instead, the plaintiff relies on her own deposition testimony and that of Ferreras, who cannot recall even visiting the Sam's

Club store in 1999, that similar white rope was "always" in the Sam's Club parking lot. None of this testimony indicates that any complaints were ever made to the defendants or that the defendants should have been aware of a specific, recurring dangerous condition. These conclusory statements are insufficient to raise an issue of fact regarding the existence of a recurring dangerous condition. *See Grottano v. City of New York, Dayton Beach Park Corp. No. 1 Corp.*, 304 A.D.2d 713, 757 N.Y.S.2d 795, 795 (App.Div.2003) ("The wholly conclusory affidavit of a resident of a third-floor apartment who claimed to have made 'numerous verbal complaints' about various unsanitary conditions on the stairs failed to establish the existence of a specific recurring condition, and was legally insufficient to constitute notice of the particular condition that caused the plaintiff's fall."); *Manzione v. Wal–Mart Stores, Inc.*, 295 A.D.2d 484, 744 N.Y.S.2d 466, 467 (App.Div.2002) (finding that plaintiff's conclusory allegation that hangers on storeroom floor were recurring hazard was insufficient to raise issue of fact as to recurring dangerous condition); *Carlos*, 692 N.Y.S.2d at 428–29 ("The conclusory affidavits of the nonparty witnesses, which fail to identify how long the condition existed, or the identity of the persons to whom notice of the condition was allegedly given, and when and how it was given, are without probative value.").

Based on the record as a whole, and drawing all inferences in favor of the plaintiff, a reasonable jury could not conclude that the plaintiff has submitted sufficient evidence showing that the defendants had actual or constructive notice of the particular dangerous condition that allegedly caused the plaintiff's injury. Because there is no genuine issue of material fact regarding the plaintiff's failure to make out a prima facie case of negligence by Sam's Club, summary judgment must be granted dismissing the complaint. As a result, summary judgment must also be granted in favor of Mid Westchester, the third-party defendant, because there is no grounds for contribution or indemnity where there is no liability. Even if the plaintiff's complaint were not dismissed, however, summary judgment would still be appropriate on the third-party claims, because Sam's Club has made no effort to establish the asserted negligence by Mid Westchester.

## CONCLUSION

For the reasons explained above, the defendants' motion for summary judgment is granted. The third-party defendant's motion for summary judgment is also granted. The Clerk is directed to enter judgment dismissing the complaint and the third-party complaint and closing this case.

**SO ORDERED.**