John DOE, Mary Doe, and Johnny Doe, Plaintiffs,

v.

### SCHOOL ADMINISTRATIVE DISTRICT NO. 19, et al., Defendants.

No. CIV. 98–0224–B.

United States District Court, D. Maine.

Aug. 31, 1999.

58

Judith W. Thornton, Ebitz & Thornton, P.A., Bangor, ME, for Plaintiffs.

Jerrol A. Crouter, Drummond, Woodsum, Plimpton & Macmahon, Portland, ME, Kevin M. Cuddy, Cuddy & Lanham, Bangor, ME, for Defendants.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

Plaintiffs, John and Mary Doe, and their son, Johnny Doe ("Plaintiffs"), bring this action against School Administrative District No. 19 ("SAD #19"), a municipal school district empowered to administer the public schools in Lubec, Maine, the Interim Superintendent of SAD #19, Briane Coulthard ("Coulthard"), and Principal Thomas Brennan ("Brennan"). Plaintiffs filed a seven count Complaint alleging violations of Title IX of the Education Act Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq.* (Counts I & II), 42 U.S.C. § 1983 (Counts IV & V), the Maine Human Rights Act ("MHRA"), Me.Rev. Stat. Ann. tit. 5, § 4602 (Counts VI & VII), and negligence (Count III) on the part of all three Defendants.

Before the Court is Defendant's Motion for Summary Judgment as to all seven counts. For the reasons discussed below, the Defendant's Motion is GRANTED IN PART and DENIED IN PART.

## I. STANDARD for SUMMARY JUDGMENT

Summary judgment is appropriate in the absence of a genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine for these purposes if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is one that has "the potential to affect the outcome of the suit under

applicable law." *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir. 1993). Facts may be drawn from "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Fed.R.Civ.P. 56(c). "Fed.R.Civ.P. 56 does not ask which party's evidence is more plentiful, or better credentialled, or stronger." *Greenburg v. Puerto Rico Maritime Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987). Rather, for the purposes of summary judgment the Court views the record in the light most favorable to the nonmoving party.[1] *See McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995).

## II. BACKGROUND

In the fall of 1996, John and Mary Doe enrolled their 15–year–old son, Johnny Doe ("Doe"), in SAD # 19. He was enrolled as a sophomore in the high school, which had enrollment of approximately 108 students. For the 1996–1997 school year, the high school had a teaching staff of approximately 15 teachers. One of those teachers was Cathy Curtis ("Curtis"), a 24–year–old special education teacher. Curtis had just been hired by the district and was considered to be on probationary status.

During the fall of 1996, various teachers, students, and members of the community noticed that Curtis was developing inappropriately close relationships with some male high school students. At a school Halloween dance, a substitute teacher, Ms. Moores ("Moores") observed Curtis dancing in a suggestive manner with several boys. Moores had previously heard rumors that Curtis had a sexual relationship with one of these boys and decided to take her concerns to Principal Brennan. Moores met with Brennan and expressed concern about what she had seen and heard. Specifically, she told Brennan that Curtis might be having a sexual relationship with at least one boy. In response,

Brennan alerted Moores that she could be "sued for slander for saying those things." Brennan made no attempt to investigate Moores' accusations following the meeting.

During the month of November, others brought their concerns to both Principal Brennan and Interim Superintendent Coulthard. These included reports from the school custodian of high school students gathering at Curtis's house as well as reports from a school board member that Curtis appeared too close to male basketball players and was rumored to have gone to the movies with students. In response to these reports, Interim Superintendent Coulthard directed Principal Brennan to meet with Curtis.

Brennan met with Curtis the week before Thanksgiving. Ms. Jamieson, the high school unit coordinator, and Ms. Batstone, a study hall monitor, also attended this meeting. Upon being confronted with the accusation of dating a student and having students at her home, Curtis denied dating a student and explained that students occasionally came to her house for tutoring. Brennan accepted this response but directed Curtis to discontinue tutoring in her home.

Following the meeting, Ms. Jamieson met with Coulthard and expressed her concerns regarding Curtis's relationships with junior and senior boys. The day before Thanksgiving, Brennan witnessed Curtis leave a school event in her car with a male student. When Brennan next saw Curtis, he reminded her of their previous meeting. Curtis responded by explaining that she had taken the boy home to change his clothes. Brennan took no other action to investigate any of the allegations nor did he confront Curtis regarding specific allegations of sexual misconduct.

During the fall of 1996, Doe was not assigned to any of Curtis's classes and essentially had no contact with Curtis. However, Curtis and Doe met at an away

---

1. The Court notes Plaintiff's failure to comply with Local Rule 56(c). As a result, analysis of the material facts is made much more difficult and could well have resulted in sanctions.

basketball game on Friday, December 6, 1996. Curtis attended the game in order to assist in keeping statistics for the team. Doe had come as a spectator and ended up assisting Curtis.

The principal claims in this case arise out of Curtis's egregious sexual harassment of Doe the following night on December 7, 1996. Curtis had offered to take a group of boys, including Doe, to a concert in a neighboring town. However, because of the boys' ages (Doe was 15 and the other boys were 16), they could not get in to the concert. On the way back to Lubec, Curtis purchased alcohol for the underage group and went with them to the home of one of the boys.[2] Doe proceeded to get highly intoxicated. While he was in this state, Curtis had sexual relations with Doe.

In the following months, Doe did not report this incident with Curtis to his parents or any staff member at SAD # 19.[3] At the same time, officials at SAD # 19 did not undertake any investigation of Curtis's alleged misconduct that had been reported by others. In fact, faculty, including Curtis, questioned students about the allegations at only one meeting held in late December. At this meeting, Curtis confronted Doe and some other boys in the presence of two other faculty members about rumors around the school that Curtis had engaged in sexual relations with them. When asked by one of the teachers whether there was truth to the rumors, all of the students, including Doe, answered "no." Neither Coulthard nor Brennan were present at this meeting, although Coulthard suggested the meeting to Curtis as a way to dispel rumors of inappropriate conduct after Curtis complained to him about such rumors.

Doe suffered from depression and contemplated suicide in the months following the incident with Curtis. He did confide in some classmates and a girl he was dating about the events on the night of December 7th. This girlfriend subsequently told her parents, who, in turn, reported the matter to police in March of 1997. This set in motion an investigation that resulted in the filing of criminal charges against Curtis, her dismissal from SAD # 19, and the filing of this lawsuit by the Does.[4]

## III. DISCUSSION

### A. Title IX & MHRA Claims

For the purposes of this case, the Court will apply the same legal analysis to Plaintiffs' MHRA claims that it applies to the Title IX claims. This interpretation is warranted because the language of the relevant MHRA provision tracks the language of Title IX. *See* Me.Rev.Stat. Ann. tit. 5, § 4602. Additionally, Maine courts "look to federal law in the interpretation of the MHRA." *Davidson v. Liberty Mutual Ins. Co.,* 998 F.Supp. 1, 6 n. 4 (D.Me.1998); *See Soileau v. Guilford of Maine, Inc.,* 105 F.3d 12, 14 (1st Cir.1997) (applying ADA analysis to relevant provision of MHRA); *Perez v. Maine,* 585 F.Supp. 1535, 1539–41 (D.Me.1984) (finding that legal rights under Title VII and similar MHRA provision, 5 M.R.S.A. § 4572, were "fully equivalent"). However, in doing this the Court notes that section 4602 of the MHRA and Title IX do differ in that compliance with the latter is tied to federal funding while compliance with the state provision is not tied to funding.[5] Nonetheless, the Su-

---

**2.** This was not the first time Curtis had supplied alcohol to SAD # 19 students. Purportedly, on one previous occasion when Curtis had underage students drinking at her home, she slept in her bed with an intoxicated male student.

**3.** During the 1996–97 school year, SAD# 19 had neither an official published policy against sex discrimination and harassment, nor an established grievance procedure for

students, parents or employees to file sexual harassment complaints.

**4.** Curtis entered into a plea agreement to the criminal charges stemming from the incident. Although she was originally a named defendant in this case, the parties have entered into a stipulation dismissing Curtis from the case without prejudice.

**5.** Plaintiffs note this difference in their Motion in Opposition to Defendants' Motion for Sum-

preme Judicial Court of Maine has said the "use of federal precedent as an aid in interpreting Maine's anti-discrimination provisions is appropriate." *Bowen v. Dept. of Human Services,* 606 A.2d 1051, 1053 (1992).

As a preliminary matter, at oral argument both sides were in agreement with the case precedent that there is no individual liability under Title IX. *See Lipsett v. University of Puerto Rico,* 864 F.2d 881, 901 (1st Cir.1988). Rather, liability under Title IX is clearly limited to the funding recipient. *See Davis v. Monroe Cty. Bd. of Ed.,* 526 U.S. 629, ——, 119 S.Ct. 1661, 1670, 143 L.Ed.2d 839 (1999). Consequently, the Court dismisses all Title IX and MHRA claims against Defendants Coulthard and Brennan leaving only SAD # 19 to answer for the Title IX and MHRA claims that survive Defendant's Motion for Summary Judgment.

1. Sexual Harassment (Counts I & VI)

The Court reads Counts I & VI of the Plaintiff's Amended Complaint to allege two separate grounds for sexual harassment. First, Plaintiffs assert that Doe was subject to sexual harassment on December 7, 1996 when he was subjected to unwelcome and nonconsensual sexual intercourse by Curtis, a SAD # 19 teacher. Second, Plaintiffs allege in the months following the incident Curtis's continuing presence at the school created a hostile educational environment for Doe. In both claims, Defendants' liability is premised on their failure to investigate complaints and take action against Curtis.

▮ Sexual relations between a minor student and teacher is considered sexual harassment even if the teacher does not expressly threaten to inflict a penalty, for example, giving the student a lower grade, or withhold a benefit, for example, extra tutoring. *See Gebser v. Lago Vista Ind. School Dist.,* 524 U.S. 274, 118 S.Ct. 1989, 1994, 141 L.Ed.2d 277 (1998). Additionally, under Title IX a sexual harassment claim may be based on a hostile educational environment. *See Davis v. Monroe Cty. Bd. of Ed.,* 526 U.S. 629, 119 S.Ct. 1661, 1676, 143 L.Ed.2d 839 (1999). Within the context of Title IX, a student's claim of hostile environment can arise from a single incident. *Brown v. Hot, Sexy and Safer Productions,* 68 F.3d 525, 541 n. 13 (1st Cir.1995) (noting that "a one-time episode is not per se incapable of sustaining a hostile environment claim").

▮ Both types of claims are required to meet the same legal standard. Namely, a school district may be found liable for any type of sexual harassment under Title IX only if "an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to the teacher's misconduct." *Gebser,* 118 S.Ct. at 1999. In the context of peer hostile environment harassment, the Supreme Court interpreted deliberate indifference to mean that the official's response or lack thereof must be "clearly unreasonable in light of known circumstances." *Davis,* 526 U.S. at ——, 119 S.Ct. at 1674. The First Circuit re-

mary Judgement. (Pls.' Opp. Mot. to Def.'s Mot. Summ. J. at 44.) In their brief, however, Plaintiffs do not argue that this difference calls for a different interpretation of section 4602. Additionally, Plaintiffs did not take exception to the Court's suggestion at oral argument that the MHRA claims "rise and fall" with the Title IX claims in this case.

Nonetheless, the Court does recognize that Maine courts have not yet decided any cases under section 4602 seeking monetary damages under an implied private cause of action, although the Supreme Court has found that

such a remedy exists under Title IX. *See Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Franklin v. Gwinnett Cty. Public Schools,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). While it is not clear that the Maine courts would adopt the Title IX standard of liability set out in *Gebser v. Lago Vista Ind. Sch. Dist.,* 524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998), under the present state of the law, it is appropriate to look to federal interpretation in analyzing other areas of the MHRA.

cently applied these standards in the case, *Wills v. Brown University*, 184 F.3d 20, 22 (1st Cir.1999), which involved accusations by a female student of a single incident of sexual harassment by a male professor.

In *Wills*, the First Circuit noted that categorizing types of sexual harassment is of "limited utility." *Wills*, at 29 (quoting *Burlington Industries v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 2264, 141 L.Ed.2d 633 (1998)). Nonetheless, the Court in this case separates the Plaintiffs' claims because they require the Court to examine different time frames in which the Defendants had actual knowledge and displayed deliberate indifference. Thus, in deciding whether it is appropriate to grant summary judgment on Counts I and VI, the Court must determine whether there is evidence upon which a reasonable jury could find that SAD # 19 had actual notice of Curtis's behavior and yet displayed deliberate indifference because their response was clearly unreasonable in light of known circumstances.

Contrary to the Defendant's position, the Court finds that both Brennan and Coulthard, as Principal and Interim Superintendent respectively, were in a position to institute corrective measures on behalf of SAD # 19. (Defs. Mot. for Summ. J. at 13–14.) In reviewing the actual knowledge and response of SAD # 19, the Court will look at what Brennan and Coulthard knew and what corresponding action they took.

### a. Actual Notice

■ The Supreme Court has only recently outlined the actual notice standard. *See Gebser*, 118 S.Ct. at 1997–2000 (1998). Therefore, its limits have not yet been clearly defined. In *Gebser*, the Court did find that the school district's actual notice of a teacher's inappropriately suggestive comments made during class "was plainly insufficient to alert the principal to the possibility that [the teacher] was involved

in a sexual relationship with a student." *Id.* at 2000. Thus, it is clear that actual notice requires more than a simple report of inappropriate conduct by a teacher. On the other hand, the actual notice standard does not set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student. Such a high standard would protect school districts from liability whenever a student was abused by a teacher, although the district might have had notice that the teacher had abused other students in the past.

This Court need not find that SAD # 19 officials had actual notice of sexual abuse of Doe specifically to warrant investigation by school officials as suggested by the Defendants. (Defs. Mot. for Summ. J. at 13–15.) Rather, SAD # 19 could be considered to have actual notice if it had reports that Curtis was having sexual relations with another student. Viewing the facts in the light most favorable to the Plaintiff, SAD # 19 had such notice. Moores, a substitute teacher, met with Brennan in the first or second week of November, 1996 and reported to him that Curtis was having a sexual relationship with at least one male student. A reasonable jury could find the school had actual knowledge that Curtis was having sexual relations with a male high school student prior to December 7, 1996.

■ Because the same notice that existed prior to December 7, 1996, existed after that date, this Court cannot find as a matter of law that the school had no notice of the hostile environment alleged by the Plaintiff. The School District had actual notice that Curtis was having a sexual relationship with at least one male student. This Court concludes that this knowledge would put school officials on notice that the educational environment of that student was altered.[6] This is especially true be-

---

**6.** In reaching this ruling the Court does recognize that the Supreme Court has only decided one case of clear hostile educational environment harassment. In *Davis v. Monroe Cty., Board of Ed.,* — U.S. —, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), the hostile

cause the alleged sexual misconduct was severe and the school community was a small one. *Cf. Wills*, at 27 (explaining that mere continued presence of professor on large university campus does not create hostile environment).

### b. Deliberate Indifference

■ After establishing actual notice, Plaintiffs must also present evidence that the response of school officials was clearly unreasonable and rose to the level of deliberate indifference. This requirement protects schools from liability under Title IX when they take "timely and reasonable measures" to end harassment. *Wills*, 184 F.3d 20, 25. Whether a response or lack thereof displays deliberate indifference inherently involves an assessment of the seriousness and credibility of the complaint that put school officials on notice. To warrant investigation, however, a report alleging serious sexual misconduct by a teacher need not come from an eyewitness or in the form of a sworn affidavit.

Prior to December 7, 1996, Defendant did respond to complaints about Curtis by meeting with her in the week before Thanksgiving. At that time, Brennan confronted Curtis about allegations of both having students at her home and dating students. He never specifically confronted her with allegations of sexual relations with a student, nor did he conduct an investigation that involved speaking with

any students.[7] A jury could find that this response was clearly unreasonable in light of known circumstances. Additionally, a jury could reasonably conclude that Brennan displayed deliberate indifference when, in November, he warned a substitute teacher that she could be sued for slander for telling him that Curtis was having a sexual relationship with a student and made no effort to investigate the matter.

Similarly, a reasonable jury could find that SAD # 19 displayed deliberate indifference after December 7, 1996, because no school officials undertook to investigate complaints regarding Curtis. Rather, Interim Superintendent Coulthard only suggested that Curtis question some of the male students about the allegations after Curtis herself went to him claiming she was upset by the rumors. At the subsequent meeting, Curtis confronted the boys herself in the presence of two of her colleagues with neither Coulthard or Brennan present. In the face of allegations of sexual misconduct that had been brought to the attention of school officials on more than one occasion, there is a genuine issue as to whether Coulthard and Brennan's blatant failure to question a single student regarding the allegations, which had been reported to them from parents, teachers, and members of the community, amounted to deliberate indifference.

---

environment arose out of a male student's repeated harassment of a female student. In *Davis*, the Supreme Court suggested that the actual notice standard was satisfied by repeated reports of the harassing conduct to the teacher and principal by both the student and her mother. *See id.* at 1676. In this case, Plaintiffs made no reports to school officials. The Defendant was not notified that Doe specifically was being subjected to a hostile environment. Nonetheless, this Court is not prepared to say that as a matter of law a school district is not on notice that there is discrimination based on sex in its programs and that the educational environment of its students is being altered when it has actual knowledge that a teacher is having sexual contact with a student below the age of consent. *See Gebser*, 118 S.Ct. at 1999.

7. Defendants attempt to argue that because an investigation prior to December 7, 1996 would not have resulted in the school district actually discovering that Curtis had sexual intercourse with any male student, there would not have been grounds for suspending or terminating Curtis even if they had conducted an investigation. (D. Mot. for Summ. J. at 26.) However, there is evidence upon which a reasonable jury might rely that prior to December 7, 1996, Curtis had already supplied alcohol to at least one male student and had him sleep in her bed. This behavior, if discovered during the course of a school investigation, could have provided grounds for SAD # 19 to terminate Curtis.

The Court is satisfied that a genuine issue of fact exists as to whether or not SAD # 19's deliberate indifference subjected Doe to both sexual abuse and a hostile educational environment. *SeeDoe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 457 (5th Cir.1994) (finding that reasonable jury could conclude that if school official had taken action when he had notice of teacher's inappropriate behavior, sexual contact, which formed most serious basis of plaintiff's injury, might have been avoided). For these reasons, Defendant's Motion for Summary Judgment with regards to Counts I and VI is denied.

### 2. Gender Discrimination (Count II & VII)

■ Plaintiffs allege that but for the sex of the victim in this case, the Defendants would have promptly investigated claims of teacher misconduct and thereby prevented the events of December 7, 1996. This allegation makes up the gender discrimination claim under both Title IX (Count II) and MHRA (Count VII). The Court finds no evidence in the record upon which a reasonable jury might conclude that but for Doe's sex SAD # 19 would have handled the allegations differently. The Court grants summary judgment in favor of the Defendants as to Counts II and VII.

### B. Section 1983 Claims

#### 1. Equal Protection

■ Similar to their claims advanced by in Counts II and VII, Plaintiffs allege in Count V that Doe was denied equal protection because the school district handled this incident differently than it would have if he had been a female student. Because the Court has been unable to find any evidence in the record from which a reasonable jury could conclude that Defendants' inept handling of the Curtis matter was based on the fact the students in-

volved were male, summary judgment in favor of the Defendants is granted as to Count V.

#### 2. Substantive Due Process

In Count IV, the Plaintiffs allege that Doe's constitutional right to bodily integrity was violated on December 7, 1996. It is well recognized that students have a fundamental right to bodily integrity that includes the right to be free from sexual abuse. *See Doe*, 15 F.3d at 451–52; *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 727 (3rd Cir.1989). In this case, Plaintiffs claim that SAD # 19, Interim Superintendent Coulthard, and Principal Brennan are liable for the violation of Doe's bodily integrity, which occurred at the hands of then-teacher Cathy Curtis.

The Court finds that this remaining section 1983 claim against SAD # 19, Coulthard, and Brennan cannot withstand summary judgment as a matter of law. Because Defendants have raised different legal arguments with regard to the school district and the individual defendants, the Court will address the liability of each separately.

#### a. Liability of SAD # 19

■ In deciding whether the Plaintiffs may maintain a section 1983 claim against SAD # 19 in addition to the Title IX claim, the Court relies on *Nelson v. University of Maine*, 914 F.Supp. 643 (D.Me.1996). In that case, this Court applied the *Sea Clammers* doctrine and found that the comprehensive enforcement scheme existing under Title IX precluded the section 1983 claim against the university. *See id.* at 647–48 (citing *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)). Although the First Circuit has not ruled on this issue,[8] a

---

**8.** The Court notes that there is currently disagreement among the District Courts within the First Circuit regarding the extent to which *Sea Clammers* does in fact preclude a plaintiff

from pursuing a section 1983 claim in addition to a Title IX claim. *Compare Canty v. Old Rochester Regional Sch. Dist.*, No. Civ.A. 98–11531–WGY, 1999 WL 436759 (D.Mass.

recent Second Circuit decision similarly upheld the dismissal of section 1983 claims against a school district that arose out of "the same factual predicate as [the] Title IX claims." *Bruneau ex rel. Schofield v. South Kortright Cent. School Dist.,* 163 F.3d 749, 758 (2d Cir.1998), *cert. denied,* — U.S. ——, 119 S.Ct. 2020, 143 L.Ed.2d 1032 (1999). *See also Waid v. Merrill Area Pub. Sch.,* 91 F.3d 857, 862–63 (7th Cir.1996); *Williams v. School Dist. of Bethlehem,* 998 F.2d 168, 176 (3rd Cir. 1993). The Court grants summary judgment in favor of Defendant SAD # 19 on Count IV on the grounds that the 1983 claim is precluded by the remedy afforded to the Plaintiffs against SAD # 19 under Title IX.

### b. Liability of Coulthard and Brennan

██ This Court does not go so far às to say that *Sea Clammers* precludes the Plaintiffs from pursuing section 1983 claims against individual defendants who are not subject to liability under Title IX. *See Lipsett v. University of Puerto Rico,* 864 F.2d 881, 901 (1st Cir.1988) (explaining that "liability of supervisory officials must be established, if at all, under section 1983, rather than Title IX"). Consequently, the Court must examine whether Plaintiffs fulfill the legal requirements for a claim under 42 U.S.C. § 1983 against Coulthard and Brennan. To sustain a section 1983 claim, Plaintiffs generally need to show not only a violation of a constitutional right, but also that the deprivation was committed by a person acting under the color of state law. *See West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

Because it is well-established that there is no respondeat superior liability under section 1983, for the Court to find that a supervisor is liable for a subordinate's action depriving a person of his constitutional rights, two inquiries are required. *See*

*Lipsett,* 864 F.2d at 901–02. First, there must be evidence that the behavior of the subordinate resulted in a constitutional violation. The second inquiry asks whether the "supervisor's action or inaction [can be] affirmatively linked to that behavior" such that it amounts to "encouragement, condonation or acquiescence" or amounts to "deliberate indifference." *Id.* at 902 (citations omitted). To satisfy the first inquiry, Plaintiff has to show that "(1) the conduct complained of was committed *by a person acting under color of state law;* and (2) that this conduct deprived a person of rights ... secured by the Constitution." *Id.* (emphasis added).

The Court looks to decisions of the Fifth and Tenth Circuits that have resolved the issue of when a teacher can be considered to be acting under the color of law. In *D.T. v. Independent Sch. Dist.,* 894 F.2d 1176 (10th Cir.1990), the Tenth Circuit held that a teacher was not acting under the color of state law when he abused students during fundraising efforts for a private basketball camp. *See id.* at 1186–87. The court found that although the teacher had initially met the students while acting in his teaching and coaching capacity, there was "absolutely nothing in the record demonstrating that the School District had any control over [the teacher] during the summer months" when the abuse occurred. *Id.* at 1187. Because the plaintiff failed to prove a "real nexus" between the fundraising activities and any school activity, the court concluded that the teacher could not be viewed as acting under the color of state law. *Id.* at 1188.

More recently, the Fifth Circuit reached a similar conclusion in a case where a teacher had molested a student in his home after the student was no longer enrolled in the school. *See Becerra v. Asher,* 105 F.3d 1042, 1044 (5th Cir.1997), *cert. denied,* 522 U.S. 824, 118 S.Ct. 82, 139

June 21, 1999) (applying *Sea Clammers* doctrine to dismiss section 1983 claim against both school district and individual plaintiffs), *with Doe v. Old Rochester Regional Sch. Dist.,*

56 F.Supp.2d 114 (D.Mass. 1999) (disagreeing with *Canty* decision and finding that Title IX does not preclude section 1983 claims).

L.Ed.2d 40 (1997). Despite evidence showing the teacher had initially befriended the student at school, the Fifth Circuit similarly held "there was no 'real nexus' . . . between the activity out of which the violation occur[ed] and the teacher's duties and obligation as a teacher." *Id.* at 1047 (citations omitted).

The facts surrounding the sexual misconduct in this case are similar to those in *D.T.* and *Becerra* and lead this Court to the same conclusion: Curtis's actions on December 7, 1996, while an admittedly egregious violation of Doe's bodily integrity, cannot be seen as occurring under the color of state law.[9] First, the abuse in this case occurred off school grounds on a Saturday night, when school was not in session. Second, Curtis's attempt to take the boys to a concert was not part of any extra-curricular activity tied to SAD # 19 and was in no way sanctioned by the school. Additionally, because Doe did not have Curtis as a teacher prior to December 7, 1996 and had not really had any opportunity to interact with her at the school, it cannot be said that Curtis befriended Doe while acting in a teaching capacity.

Because the Plaintiffs section 1983 claim cannot withstand the first inquiry under *Lipsett,* the Court need not reach the second inquiry.[10] Rather, Plaintiffs' claim under 1983 must fail because the Court cannot impose supervisory liability when it finds the subordinate was not acting under the color of state law. *See Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (finding there was no supervisory or municipal liability under section 1983 when jury concluded that police officer inflicted no constitutional injury).

The conclusion that Plaintiffs section 1983 claim against Coulthard and Brennan fails because no constitutional violation occurred under the color of state law,[11] does not preclude the Plaintiffs from pursuing a tort claim against these defendants. Rather, the Court finds that on the facts presented Defendants Coulthard and Brennan cannot be liable under section 1983 for Ms. Curtis' violation of Doe's bodily integrity on December 7, 1996.[12] *See Frances–Colon v. Ramirez,* 107 F.3d 62, 63–64 (1st Cir.1997) ("A proximate causal link between a government's agents actions and a personal injury does not, in itself, bring a case out of the realm of tort law and into the domain of constitutional due process.").

For the reasons, discussed above the Court grants Defendants' Motion for Summary Judgment as to Count IV.

---

**9.** In reaching this conclusion, the Court believes that this case is distinguishable from the Third Circuit's decision in *Stoneking v. Bradford Area Sch. Dist.,* 882 F.2d 720 (3rd Cir.1989). In *Stoneking,* it was undisputed that acts of sexual abuse had been committed by the teacher on school property and during school hours. *See id.* at 722. Additionally, the plaintiff in that case was a member of the school band and the teacher had been the band leader. *See id.*

**10.** In this case, Plaintiffs argue that whether Curtis acted under the color of state law does not matter, because the Court should look only to whether Coulthard and Brennan were acting under the color of state law when they allegedly failed to take action against Curtis. (Pls.' Opp. Mot. to Def.'s Mot. Summ. J. at 41–42.) However, the Court clearly cannot jump to the second inquiry laid out by the First Circuit in *Lipsett,* without ever conducting the first. *See Lipsett,* 864 F.2d at 901–02.

**11.** In making this ruling the Court notes that there are situations in the record when Curtis clearly did engage in misconduct while she was acting under the color of state law. The most obvious example would be the meeting she held with Doe and other male students in December 1996 to address the rumors. However, these situations are not tied to December 7, 1996 when the alleged constitutional violation occurred.

**12.** In holding that Defendants Coulthard and Brennan are entitled to summary judgment on Count IV because the alleged violation did not occur under the color of state law, the Court does not reach and, therefore, does not explicitly address Defendants' argument that Coulthard and Brennan are entitled to qualified immunity.

**68**

## C. Negligence

 Defendants assert that Plaintiffs' claim of negligence on the part of SAD # 19, Coulthard, and Brennan cannot withstand summary judgment because Plaintiffs have failed to offer evidence from which a reasonable jury could conclude that the Defendants' negligence caused Doe's injury. (Def. Mot. for Sum. J. at 25–26.) As the First Circuit has explained, "[n]egligence ... is usually a jury issue, but only if there exists evidence from which a rational jury could find negligence in the case at hand." *Mejias–Quiros v. Maxxam Property Corp.*, 108 F.3d 425, 427 (1st Cir.1997).

Given this Court's finding that Plaintiffs have presented enough evidence to withstand summary judgment on their Title IX claim, the Court similarly finds there exists evidence from which a reasonable jury could conclude that SAD # 19, Coulthard, and Brennan were negligent. Specifically, Plaintiffs have presented a prima facie case that the Defendants owed a duty to the Plaintiff to investigate claims of sexual misconduct, that they breached that duty by failing to conduct a reasonable investigation and that the breach of that duty did proximately cause the Plaintiff to be subjected to sexual harassment by Curtis resulting in injury to him.

Thus, Defendant's motion for Summary Judgment at to Count III is denied.

## IV. CONCLUSION

For the reasons discussed above, Defendants' Motion for Summary Judgment is GRANTED as to Counts II, IV, V, and VII and DENIED as to Count III. With regard to Counts I and VI, Summary Judgment is GRANTED for Defendants Brennan and Coulthard and DENIED for SAD # 19.

*SO ORDERED.*