Pamela NILES and Tender Murphy, Plaintiffs,

v.

Peter NELSON; Anthony Peetz; and the Hancock Central School Board of Education; Richard Dillon, individually and as Superintendent of Schools of the Hancock Central School District; and Robert Wrighter, Sr., Terry Whitt, Harvey English, Frank Brown, Maureen Hunt, and Ruth Vitale, individually and as members of the Hancock Central School Board of Education; and their agents, employees, successors in office, assistance and all persons acting in concert or cooperation with them or at their direction or under their control, Defendants.

No. 98–CV–1603.

United States District Court, N.D. New York.

Oct. 25, 1999.

Leonard E. Sienko, Office of Leonard E. Sienko, Hancock, NY, for Plaintiffs.

Frank W. Miller, Miles G. Lawlor, Ferrara, Fiorenza Law Firm, East Syracuse, NY, for Defendants.

## MEMORANDUM—DECISION & ORDER

McAVOY, Chief Judge.

Plaintiffs Pamela Niles and Tender Murphy commenced the instant litigation against Defendants asserting claims pursuant to 20 U.S.C. § 1681, *et. seq.* ("Title IX") (Counts 1, 3, 5 and 7) and state law claims of the intentional infliction of emotional distress (Counts 2, 4, and 6), and negligence (Count 8). Presently before the Court is Defendants' motion for summary judgment pursuant to FED. R. CIV. P. 56 seeking dismissal of the First, Second, Fifth, Sixth, Seventh, and Eighth Causes of Action asserted in the Amended Complaint.[1]

## I. BACKGROUND

Because this is a motion for summary judgment by Defendants, the following facts are presented in the light most favorable to Plaintiff. *See Ertman v. United States,* 165 F.3d 204, 206 (2d Cir.1999).

Plaintiff Tender Murphy ("Murphy") is the daughter of Plaintiff Pamela Niles ("Niles"). Murphy was a student attending school in the Hancock Central School District during the 1994–1995 school year. At that time, Murphy was fourteen years old and in the ninth grade. Among other classes, Murphy was taking a German I class from Defendant Peter Nelson, a teacher with the Hancock Central School District.

The Complaint alleges that Nelson exercised little control over the German class and permitted male students to make inappropriate sexual comments about Murphy

---

1. The motion for summary judgment has been made on behalf of all Defendants except Anthony Peetz, who is appearing *pro se.* Peetz has not moved for summary judgment.

and other females in the class. Plaintiffs allege that Nelson also made inappropriate sexual comments and joined with the male students's improper conduct. Plaintiffs complain that Nelson and the male students used the terms "tits" or "breasts;" the male students would frequently comment on the female students's physical appearance, including commenting on their anatomy; Nelson permitted other students to use profanity in the classroom; and that Nelson and the male students would comment whether particular girls looked "nice" or "had a good body." Plaintiffs also complain of an instance whereby Peetz, another student in the class, inquired of Nelson whether a particular female teacher had a tattoo on her crotch and whether Nelson had engaged in sexual intercourse[2] with her. Nelson purportedly responded that he had engaged in sexual relations with the other teacher and that she did have a tattoo on her crotch. Plaintiffs further contend that Nelson treated the female students academically different from the males as evidenced by Nelson calling on male students before calling on female students and Nelson's offering immediate assistance to male students who were having difficulty in class, whereas he is alleged to have advised female students to wait a few days before he would provide them with extra assistance.

Plaintiffs contend that Murphy and other girls in the class repeatedly complained to Nelson about the inappropriate conversations and comments and requested that it be stopped. On or about May 10, 1995, Murphy and the other females were removed from the class and brought to the school's main office where they were interviewed regarding the allegations of sexual discrimination and harassment in the classroom. Murphy and the other females were not permitted to return to the German class for the remainder of the school year.

On or about May 16, 1995, Murphy complained to Defendant Richard Dillon, the Superintendent and Title IX compliance officer, about Nelson's behavior, that she had been improperly removed from class, and that Peetz had engaged in a course of retaliation against her for complaining about his and Nelson's activities in class.

Dillon commenced an investigation into Murphy's allegations. The matter was referred to School District Attorney John Lynch, Esq. for investigation. Lynch investigated the matter and determined that Murphy's allegations of sexual harassment were false, and recommended that the School District consider initiating disciplinary proceedings against Murphy, among others, for filing false complaints.

The School District adopted Lynch's recommendations and instituted disciplinary proceedings against Murphy and others pursuant to N.Y. EDUC. LAW § 3214. Hearings were held, at which Murphy was represented by counsel. A hearing officer found Murphy guilty of the charge of making a false report. Murphy was then given a four day out-of-school suspension. Murphy appealed the suspension to the Board of Education, which upheld the suspension.

Plaintiffs commenced the instant litigation against Defendants on October 13, 1998, and filed an Amended Complaint on May 11, 1999, asserting state law claims of negligence, and the intentional infliction of emotional distress, and asserting claims of sexual discrimination and retaliation pursuant to Title IX. Presently before the Court is Defendants's motion for summary judgment pursuant to FED. R. CIV. P. 56 seeking dismissal of the Amended Complaint against them in its entirety.

## II. DISCUSSION

### A. Summary Judgment Standard

The standard for summary judgment in discrimination cases is well-settled and

---

2. According to Plaintiffs, Peetz did not phrase the inquiry as politely, opting instead to use the vernacular form—"fuck".

need not be restated here. This Court has set forth the appropriate standard to be applied in numerous published decisions, see *Roman v. Cornell Univ.*, 53 F.Supp.2d 223, 232–33 (N.D.N.Y.1999); *Phipps v. New York State Dep't of Labor*, 53 F.Supp.2d 551 (N.D.N.Y. June 24, 1999); *Riley v. Town of Bethlehem*, 44 F.Supp.2d 451, 458 (N.D.N.Y.1999), and will apply the same standard discussed in those cases to Defendants's motion for summary judgment.

**B. Whether the Individual Defendants May Be Held Liable Under Title IX**

■ Defendants first move to dismiss the claims against them in their individual capacities on the ground that individuals may not be held liable under Title IX. In response, Plaintiff urges this Court to adopt the reasoning in *Mennone v. Gordon*, 889 F.Supp. 53 (D.Conn.1995).

The *Mennone* case stands alone in its holding that individuals may be liable under Title IX. This Court has been unable to locate a single case agreeing with *Mennone's* holding in this regard. Although the Second Circuit has not addressed this issue, all other circuit courts and district courts that have addressed the issue (including District Courts within the Second Circuit) have found that individuals may not be liable under Title IX. *See Smith v. Metropolitan School Dist.*, 128 F.3d 1014, 1019–1020 (7th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 2367, 141 L.Ed.2d 736 (1998); *Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 611 (8th Cir.1999); *Floyd v. Waiters*, 133 F.3d 786 (11th Cir.), *vacated and remanded*, —— U.S. ——, 119 S.Ct. 33, 142 L.Ed.2d 25 (1998), *reinstated*, 171 F.3d 1264 (1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 215, —— L.Ed.2d —— (1999); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 901 (1st Cir.1988); *Doe v. School Admin. Dist. No. 19*, 66 F.Supp.2d 57, 59 (D.Me.1999); *Communities for Equity v. Michigan High School Athletic Ass'n.*, 26 F.Supp.2d 1001, 1009 (W.D.Mich.1998); *Petrone v. Cleveland State Univ.*, 993 F.Supp. 1119, 1125 (N.D.Ohio 1998); *Buckley v. Archdiocese of Rockville Centre*, 992 F.Supp. 586, 588 n. 3 (E.D.N.Y.1998); *Burrow v. Postville Community Sch. Dist.*, 929 F.Supp. 1193, 1207 (N.D.Iowa 1996); *Nelson v. Temple Univ.*, 920 F.Supp. 633, 636–37 (E.D.Pa. 1996); *Pallett v. Palma*, 914 F.Supp. 1018, 1025 (S.D.N.Y.1996), *rev'd on other grounds*, 119 F.3d 80 (2d Cir.1997); *Torres v. New York Univ.*, 1996 WL 15691 at *2 (S.D.N.Y. Jan 17, 1996).

Indeed, such a holding seems consistent with the Supreme Court's statement in *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, ——, 119 S.Ct. 1661, 1670, 143 L.Ed.2d 839 (1999) that "we have not extended damages liability under Title IX to parties outside the scope of [the government's enforcement] power." The government's enforcement power under Title IX primarily consists of withholding federal funds from the recipient, which is the school district, not, for example, an individual teacher or school board member. *See* 20 U.S.C. § 1682. Accordingly, the Court adopts the reasoning in the above-cited cases and finds that a Title IX claim may not be brought against an individual.[3] The Title IX claims against the individual Defendants, therefore, are dismissed.

**C. Whether the State Law Tort Claims are Subsumed in the Title IX Claims**

■ Defendants next move to dismiss the state law tort claims of negligence and the intentional infliction of emotional distress arguing that Title IX is the exclusive remedy for sex discrimination and sexual harassment under the circumstances of this case. Plaintiffs respond that Title IX does not preclude tort claims against the

---

**3.** The Court need not decide whether a Title IX claim may be asserted against an individu-

al who is the actual grant recipient.

individual defendants that also may arise out of the same facts and circumstances giving rise to the Title IX claims. According to Plaintiff, adoption of Defendants's rationale would insulate individuals from any liability for sexual discrimination or harassment where a claim could be brought against a grant recipient under Title IX—a result that Plaintiff contends Congress did not intend.

In support of their argument, Defendants largely rely on *Bruneau ex rel. Schofield v. South Kortright Cent. Sch. Dist.*, 163 F.3d 749 (2d Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 2020, 143 L.Ed.2d 1032 (1999). *Bruneau* involved the question of whether a Title IX plaintiff may also assert a section 1983 cause of action against the school district (and not the individual defendants) on an independent constitutional right, which, in *Bruneau*, was the Equal Protection Clause. *Id.* at 755. The Second Circuit noted that the "§ 1983 claim is based on the same factual predicate as [the] Title IX claim." *Id.* at 758. "[T]he question [was] whether the same set of facts can provide a viable cause of action for both a Title IX and a § 1983 claim." *Id.* The Second Circuit held that:

> Although Bruneau has a constitutional right to an educational environment free of sexual harassment, we have already determined that Title IX provides the exclusive remedial avenue. Congress intended Title IX to be the appropriate vehicle to protect all of plaintiff's rights arising in this situation as Title IX's enforcement scheme fully addresses her constitutional claims against the School District and the School Board. Consequently, we hold that plaintiff may not maintain her § 1983 claim and thereby bypass the comprehensive remedial scheme created in Title IX.

163 F.3d at 758.

Although *Bruneau* may appear to preclude any claims based on the same factual predicate as the Title IX claims, *Bruneau* is limited to the issue of whether a plaintiff may assert constitutional or civil rights violations against a school district pursuant to section 1983 along with a claim under Title IX. The Second Circuit held that Title IX's remedial scheme was designed to address all such constitutional and civil rights claims. *Id.*, at 758. Accordingly, there is no need for a separate section 1983 claim. *Id.*

This point was made clear by the Seventh Circuit in *Waid v. Merrill Area Pub. Sch.*, 91 F.3d 857 (7th Cir.1996), a case cited in agreement by the Second Circuit in *Bruneau*. The *Waid* court stated that:

> Title IX gives plaintiffs access to the full panoply of judicial remedies. The provision of these remedies suggests that Congress saw Title IX as the device for redressing any grievance arising from a violation *of federal civil rights* by an educational institution. Through the establishment of this statutory regime, Congress effectively superceded a cause of action under § 1983 that was based on *constitutional principles* of equal protection.

91 F.3d at 863 (emphasis supplied). The Third Circuit has similarly held that *constitutional claims* under section 1983 are subsumed under Title IX. *See Pfeiffer v. Marion Ctr. Area Sch. Dist.*, 917 F.2d 779, 789 (3d Cir.1990). Thus, *Bruneau, Waid,* and *Pfeiffer* do not preclude state law tort claims based on facts also giving rise to a Title IX claim. Accordingly, the Court finds that the tort claims are not subsumed by Title IX. *See* discussion *infra* at II(C)(2).

### 1. Negligence

◼ Defendants next argue that because Plaintiffs's negligence claim arises out of the same set of facts giving rise the Title IX claim, it is inseparable from the Title IX claim and, thus, should be dismissed as duplicative. The Court disagrees.

First, unlike the New York cases cited by Defendants, Plaintiffs have not asserted

two virtually identical state law tort claims. Rather, they have statutory claims pursuant to Title IX and a common law negligence claim.

 Second, the standards of liability under Title IX are different from a common law negligence claim. *See Davis*, 526 U.S. at ——, 119 S.Ct. at 1671 ("[W]e declined the invitation to impose liability under what amounted to a negligence standard."), 1674 ("This is not a mere 'reasonableness' standard."). For example, a damages recovery against a school district may not be based on principles of *respondeat superior* or constructive notice, *see Davis*, 526 U.S. at —— - ——, 119 S.Ct. at 1670–71; *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 118 S.Ct. 1989, 1997, 141 L.Ed.2d 277 (1998), whereas such principles usually apply in negligence actions. *See Taylor v. United States*, 121 F.3d 86, 89 (2d Cir.1997) (constructive notice in negligence case); *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 369 (2d Cir.1995)(*respondeat superior* in negligence case); *Riviello v. Waldron*, 47 N.Y.2d 297, 301, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (1979) (same). Moreover, a claim under Title IX lies upon a showing of deliberate indifference, *Davis*, 526 U.S. at ——, 119 S.Ct. at 1670; *Gebser*, 118 S.Ct. at 1999, which standard is higher than that required to succeed on a claim of negligence. *See Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994) ("deliberate indifference describes a state of mind more blameworthy than negligence."); *Polanco v. Dworzack*, 181 F.3d 83, 1999 WL 357856, at *1 (2d Cir. May 28, 1999) (table decision); *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir.1998); *Howard v. Grinage*, 82 F.3d 1343, 1351–52 (6th Cir.1996).

Third, the Supreme Court stated in *Gebser* that "[o]ur decision does not affect any right of recovery that an individual may have ... as a matter of state law." 118 S.Ct. at 2000. This would tend to indicate that a negligence claim may be brought regardless of the existence of a Title IX claim.

Fourth, courts have permitted causes of action to be asserted together with claims under Title IX, although those courts did not address whether the tort claims were subsumed by the statutory claim. *See, e.g., School Adminis. Dist. No. 19*, 1999 WL 728317, at *9; *Frye v. Board of Educ. of the County of Ohio, West Virginia*, 172 F.3d 43, 1999 WL 22733 (4th Cir. Jan.21, 1999) (table decision) (upholding jury verdict on negligence claim); *Smith*, 128 F.3d at 1017 (noting district court's denial of motion for summary judgment seeking dismissal of negligence claim); *S.B.L. v. Evans*, 80 F.3d 307 (8th Cir.1996); *see also, M.H.D. v. Westminster Schools*, 172 F.3d 797 (11th Cir.1999).

For the foregoing reasons, the Court finds that Plaintiffs may maintain a negligence cause of action against the School Board notwithstanding their claims pursuant to Title IX.

### 2. Intentional Infliction of Emotional Distress

 For reasons similar to those previously discussed, the Court finds that Plaintiffs may maintain a cause of action for the intentional infliction of emotional distress against the individual defendants notwithstanding their Title IX claims against the School Board. Although Title IX is sufficiently comprehensive to encompass and, thus, subsume all constitutional or civil rights claims arising out of the same predicate facts, it is not all encompassing. As noted, Title IX applies only to the grant recipient and not the individual Defendants. It would be illogical to conclude that Congress intended the availability of an action pursuant to Title IX to immunize individuals from their own tortious acts.

### D. Whether Plaintiffs's Tort Claims Are Timely

 Defendants next move to dismiss the state law tort claims (Counts 2, 6, and

8), arguing that they are time-barred. According to Defendants, Plaintiffs failed to commence their tort claims within the one year and ninety day time-period specified by N.Y. GEN. MUN. LAW § 50–i or, in the alternative, the one year time period specified in N.Y.C.P.L.R. § 215 applicable to intentional torts and they are not entitled to the tolling provision in N.Y.C.P.L.R. § 208 because the infant Plaintiff was represented by counsel. Plaintiffs respond that the tort claims asserted in the Amended Complaint relate back to the filing of the original Complaint and that the statute of limitations was tolled due to Murphy's infancy.

■ Under New York law, claims of negligence against a school district are governed by a one year and ninety day statute of limitations. See N.Y. GEN. MUN. LAW § 50–i(1)(c). The statute of limitations for intentional torts, such as the intentional infliction of emotional distress, is one year. See N.Y.C.P.L.R. § 215; see also Pravda v. County of Saratoga, 224 A.D.2d 764, 767, 637 N.Y.S.2d 508 (3d Dep't), leave to appeal denied, 88 N.Y.2d 809, 647 N.Y.S.2d 714, 670 N.E.2d 1346 (1996).

Because the alleged acts giving rise to the tort law causes of action against Nelson, Peetz, Dillon, and the School Board occurred by the end of 1996 at the latest and the instant action was not interposed until October 1998 at the earliest, such actions are time-barred unless the statute of limitations has been tolled. See N.Y.C.P.L.R. § 203, 215; N.Y. GEN. MUN. LAW § 50–i.

Such a tolling provision is supplied by N.Y.C.P.L.R. § 208 and applies to persons "under a disability because of infancy." For purposes of the present case, § 208 would extend the applicable statutes of limitation "by the period of disability." N.Y.C.P.L.R. § 208. In other words, if the toll applies, the statute of limitations did not begin to run until Murphy reached age eighteen.

Defendants cite some recent Appellate Division cases holding that the disability for infancy ends once the infant is represented by counsel. See, e.g., Henry v. City of New York, 244 A.D.2d 93, 95, 676 N.Y.S.2d 616 (2d Dep't 1998), leave to appeal granted, 93 N.Y.2d 802, 687 N.Y.S.2d 626, 710 N.E.2d 273 (1999). Those cases rely upon Hernandez v. New York City Health and Hospitals Corp., 78 N.Y.2d 687, 578 N.Y.S.2d 510, 585 N.E.2d 822 (1991), which held that the infancy toll in section 208 applies to preserve a wrongful death claim where the sole distributee is an infant, but only until such time as "appointment of a guardian or the majority of the sole distributee, whichever is earlier, when letters of administration may issue and a personal representative may assume the role of a plaintiff." 78 N.Y.2d at 694, 578 N.Y.S.2d 510, 585 N.E.2d 822.

Hernandez, however, was a unique case, readily distinguishable on its facts. Section 208 applies only to "persons entitled to commence an action." As the Court of Appeals noted in Hernandez, "[t]he 'person entitled to commence' a wrongful death action is not the decedent's distributee—who is the beneficiary of the claim—but the decedent's personal representative." 78 N.Y.2d at 691, 578 N.Y.S.2d 510, 585 N.E.2d 822. Thus, technically speaking, the infant plaintiff in Hernandez (who would have received the benefit of an award in a wrongful death action) was not "entitle[d] to commence an action" as section 208 requires.

In Hernandez, there was no personal representative of the decedent entitled to maintain the wrongful death action until a guardian of the infant distributee was appointed and letters of administration could be issued and a personal representative could assume the role of the plaintiff. Thus, section 208 did not neatly fit into the unique circumstances of the case. The Court of Appeals crafted a remedy to "strike[ ] the appropriate balance among competing policy considerations. On the one hand, Statutes of Limitation serve to

bar stale claims .... Against this important interest must be weighed the fairness of not unreasonably denying a claimant the right to assert the claim." *Hernandez*, 78 N.Y.2d at 694, 578 N.Y.S.2d 510, 585 N.E.2d 822. The majority struck this balance by applying section 208 to the wrongful death cause of action, but limiting the toll to the sooner of the appointment of a guardian or the attainment of the age of majority.

Arguably, and in the dissent's view, the majority stretched the meaning of section 208 to apply to that case because the infant distributee was not "a person entitled to commence an action" as required by section 208. The dissent also criticized the majority stating that "even if the infancy toll of CPLR 208[was] applicable in this instance, the majority's rule is inconsistent with and contradicts the clear mandate of that section; it prematurely terminates the effect of the toll upon the appointment of a guardian." *Hernandez*, 78 N.Y.2d at 699, 578 N.Y.S.2d 510, 585 N.E.2d 822.

Another case cited in *Henry*, *Baez v. New York City Health and Hospitals Corp.*, 80 N.Y.2d 571, 592 N.Y.S.2d 640, 607 N.E.2d 787 (1992), is inapposite because in that case there was an adult executrix who was capable of timely seeking the appointment of a personal representative to commence the wrongful death action for the benefit of the infant children. Thus, according to the court, "[t]he concerns expressed in *Hernandez* of not reaching the unnecessarily harsh result of denying an infant claimant the right to assert a claim is absent in this case since the executrix provided for in the will could have timely sought appointment as the personal representative of the decedent's estate and commenced the actions." *Baez*, 80 N.Y.2d at 577, 592 N.Y.S.2d 640, 607 N.E.2d 787. This above quote by the Court of Appeals in *Baez* serves to underscore the limited holding in *Hernandez*.

The unique circumstances in *Hernandez* simply are not present here. Murphy is the alleged victim of the conduct that Title IX proscribes and, thus, is a "person entitled to commence [the] action" within the meaning of section 208. Because section 208 plainly applies to the facts and circumstances of this case, unlike *Hernandez*, this Court need not weigh the conflicting policies identified by the *Hernandez* court. Thus, this Court is guided by the plain language of section 208, which provides, in part, that:

> If a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues [the statute of limitations is tolled].

Here, Murphy was under the age of eighteen at the time her causes of action accrued and, thus, was under a disability because of infancy. That disability did not end until she became eighteen, regardless of the time she consulted an attorney. *See Jusino v. New York City Housing Auth.*, 255 A.D.2d 41, 691 N.Y.S.2d 12, 18–19 (1st Dep't 1999) (Section 208 applies regardless of appointment of guardian or representation by attorney); *Strignano v. Jamaica Hosp.*, 181 Misc.2d 155, 694 N.Y.S.2d 857 (Sup.Ct.1999) (same); *Rosado v. Langsam Property Serv. Corp.*, 251 A.D.2d 258, 675 N.Y.S.2d 53 (1st Dept.1998) (initial prosecution of infant plaintiff's claim by legal representatives did not preclude infant from invoking disability toll to prevent the running of the statutory limitations period); *Kulpa v. Glass*, 903 F.Supp. 321 (N.D.N.Y.1995) (infant plaintiffs were entitled to tolling under section 208 on their 42 U.S.C. § 1983 claim despite that fact that their mother had standing to assert the claim on their behalf); *Gundershein v. Bradley–Mahony Coal Corp.*, 295 N.Y. 539, 68 N.E.2d 599 (action commenced on behalf of infant by guardian ad litem during plaintiff's infancy and dismissed on procedural grounds does not deprive plaintiff of infancy toll and plaintiff could commence a second cause of action notwithstanding statute of limitations). Murphy did not magically transform into an adult when she retained legal counsel. Rather,

she proceeded to age in accordance with the usual course of nature and the disability because of infancy did not end until such time as she became eighteen years of age. Accordingly, this Court rejects the holding in *Henry* as unpersuasive and contrary to the plain language of the statute and finds that section 208 applies under the facts and circumstances of this case to toll the running of statute of limitations until the infant plaintiff reached the age of majority.

Murphy was born on June 19, 1980 and, thus, did not turn eighteen until June 19, 1998. Plaintiffs commenced this action in October 1998, which clearly is within the one year ninety day statute of limitations contained in Gen. Mun. Law § 50–i and the one year statute of limitations applicable to intentional torts in CPLR 215.

■ Next, Defendants assert that Plaintiffs's state law tort claims are time-barred because they were first asserted in the Amended Complaint, which was filed on May 19, 1999 and served on or about May 18, 1999. Plaintiffs contend that these causes of action relate back to the interposition of the original Complaint.

Under FED. R. CIV. P. 15(c):

An amendment of a pleading relates back to the date of the original pleading when (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or (2) the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.

■ Defendants do not argue that the relation back doctrine does not apply here. Moreover, Rule 15 is to be liberally construed. *See Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 216 (2d Cir. 1983). "[U]nder FED. R. CIV. P. 15(c), the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations 'by the general fact situation alleged in the original pleading.'" *Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 86–87 (2d Cir.1999) (quoting *Rosenberg v. Martin*, 478 F.2d 520, 526 (2d Cir.), *cert. denied*, 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973)). Even though Plaintiffs assert new causes of action, the facts alleged in the original Complaint put Defendants on notice of the conduct at issue here. The new claims arise out of the same facts and transactions as the claims asserted in the original Complaint. Accordingly, the Court finds that the new causes of action relate back to the interposition of the original Complaint and the state law tort claims, therefore, are timely.

### E. Failure to State a Claim for the Intentional Infliction of Emotional Distress

Next, Defendants claim that Plaintiffs have not alleged sufficient facts to state a valid claim for the intentional infliction of emotional distress. Plaintiffs have not responded to this portion of Defendants's motion, thereby indicating that they consent to the granting of summary judgment with respect to this portion of Defendants's motion or have otherwise abandoned this claim. *See Frink America, Inc. v. Champion Road Machinery, Ltd.*, 48 F.Supp.2d 198 (N.D.N.Y.1999) (citing cases).

■ Putting aside Plaintiffs's failure to oppose this argument; to state a *prima facie* case for the intentional infliction of emotional distress, a plaintiff must demonstrate: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. *See Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir.1996) (citing *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993)). "New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute in-

tentional infliction of emotional distress." *Id.*

There is a complete absence of evidence from which a fair minded trier of fact reasonably could conclude that Nelson engaged in extreme or outrageous behavior or that he intended to cause Murphy severe emotional distress. Assuming the allegations in the Amended Complaint to be true, Nelson engaged in puerile behavior entirely inappropriate for a teacher of fourteen year-old students, behavior that certainly has no place in the German I classroom, or any other classroom. This alleged conduct, however, does not rise to the level of extreme and outrageous such that it goes beyond all possible bounds of decency and is utterly intolerable in a civilized society. At most, there are allegations of a few isolated incidents of behavior unbecoming of a high-school teacher. Moreover, there is no evidence supporting an allegation of intent. Accordingly, the claim for the intentional infliction of emotional distress against Nelson must be dismissed.

With respect to Defendant Dillon, the Court similarly finds that the claim for the intentional infliction of emotional distress must be dismissed. Dillon is alleged to have failed to properly investigate Murphy's claims of sexual harassment, to have initiated and participated in disciplinary hearing against Murphy, and to have delayed investigation of Murphy's claims of sexual harassment. Again, there is a dearth of evidence from which a jury could reasonably conclude that Dillon intended to cause distress. *See Gay v. Carlson,* 60 F.3d 83, 89 (2d Cir.1995). Further, the allegations do not rise to the level of outrageousness required to meet the very strict elements of this tort. *See id.* (lodging and discussing complaints is insufficient to sustain cause of action for the intentional infliction of emotional distress).

### F. Qualified Immunity

Defendants have moved to dismiss the Title IX claims against them on the ground that they are entitled to qualified immunity. Having found that Plaintiff may not assert Title IX claims against the Defendants in their individual capacities, the Court need not address whether they are entitled to qualified immunity.[4] There are no other remaining claims against the individual Defendants to which the qualified immunity analysis applies.[5]

### G. Causes of Action Asserted by Pamela Niles

Defendants next move to dismiss the causes of action asserted by Plaintiff Niles. Niles seeks to recover attorneys fees and other expenses incurred by her in connection with this litigation and the underlying disciplinary action against her daughter. The Court is not aware of, and Plaintiffs fail to point to, any case law supporting such a cause of action. Accordingly, the causes of action asserted by Niles are dismissed. If Plaintiffs ultimate-

---

4. The Court notes that even if the Title IX claim applied to the Defendants in their individual capacities, they would be entitled to qualified immunity with respect to the allegations of peer-on-peer sexual harassment. It was not clearly established law in this Circuit at the times at issue here that individual officials could liable for failure to prevent peer sexual harassment. *See Bruneau,* 163 F.3d at 756. *Bruneau* itself did not resolve this question in 1998. In fact, it was not until the Supreme Court decision in *Davis* that it became clearly established law in this Circuit that peer sexual harassment was actionable against officials. 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839.

5. Although Plaintiffs asserted claims pursuant to 42 U.S.C. § 1983 alleging various constitutional violations against the Defendants in their individual capacities in their original Complaint, these causes of action were dropped in the Amended Complaint. The Amended Complaint contains no causes of action pursuant to 42 U.S.C. § 1983 against the Defendants in their individual capacities. The Amended Complaint only asserts causes of action pursuant to Title IX and makes no reference to denial of the equal protection of the laws, denial of due process, or other constitutional violations.

ly prevail on their Title IX claim, they may, of course, move for attorneys's fees under 42 U.S.C. § 1988.

## H. Rule 8

█ Finally, Defendants claim that Plaintiffs's Complaint is unduly lengthy and prolix and, thus, does not comply with Fed. R. Civ. P. 8. Indeed, Plaintiff has filed a rather lengthy, rambling, repetitive, perhaps over-inclusive Amended Complaint. While the Court does not wish to lend its approval to such pleadings and much rather prefers the short, plain statement required by the Rule, Plaintiffs's Amended Complaint will be accepted as is. The pleading has adequately served its function of giving Defendants fair notice of the claims asserted so as to enable them to answer and prepare for trial. *See Salahuddin v. Cuomo*, 861 F.2d 40, 41–42 (2d Cir.1988). Defendants appear to fully comprehend Plaintiffs's causes of action, were able to submit an answer, and have been able to mount defenses to the Amended Complaint. The drastic remedy of dismissal of the Complaint for failure to comply with Rule 8 is inappropriate under the circumstances of this case, particularly where the Amended Complaint is not "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* In fact, the Amended Complaint, while hardly a model Complaint, is a marked improvement over the original Complaint.

## III. CONCLUSION

For the foregoing reasons, the Title IX claims against Defendants in their individual capacities, the claims for the intentional infliction of emotional distress against Nelson and Dillon, and all of Plaintiff Niles's claims are DISMISSED. Thus, the following Causes of Action are dismissed: the First Cause of Action to the extent it seeks to hold Nelson individually liable under Title IX and, assuming it asserts claims against Nelson in his official capacity, to the extent it is duplicative of the claim asserted in the Seventh Cause of Action; the Second Cause of Action (Intentional Infliction of Emotional Distress against Nelson); the Third Cause of Action (Title IX against Peetz); the Sixth Cause of Action (Intentional Infliction of Emotional Distress against Dillon); and the Seventh Cause of Action to the extent it seeks to hold the School Board members individually liable. In all other respects, Defendants's motion for summary judgment is DENIED.

**IT IS SO ORDERED**